K. P. CARR and VIRGINIA B. CARR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carr v. Commissioner
Docket No. 3966-77.
United States Tax Court
T.C. Memo 1979-400; 1979 Tax Ct. Memo LEXIS 120; 39 T.C.M. (CCH) 253; T.C.M. (RIA) 79400; September 25, 1979, Filed Kenneth P. Carr, pro se. Eddie L. Gibson, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax for the years and in the amounts as follows: Deficiencies
Additions to Tax, I.R.C. 1954, [1]
Year
in Income Tax
Sec. 6651(a)
Sec. 6653(a)
1972
$3,364.97 $ 841.24
$229.88
1973
6,224.55
1,556.14
306.98
1974
2,396.89
599.22
127.24
The issues for decision are: (1) Whether petitioners are entitled to deductions for business expenses in any of the years here in issue in excess of the amounts allowed by respondent in the notice of deficiency; (2) whether petitioners are entitled to a deduction for a casualty loss for the years 1973 and 1974 because of land subsidence of the property on which their personal residence was located; (3) whether expenditures made by petitioners for funeral costs for the mother and brother-in-law *122 of one petitioner are deductible either as medical expenses or ordinary and necessary business expenses; (4) whether petitioners are entitled to deduct amounts given to their son in the years 1973 and 1974 after his return from Vietnam suffering from emotional problems; and (5) whether petitioners are liable for additions to tax for the years here in issue for negligence or intentional disregard of rules and regulations and for the years 1973 and 1974 for failure to timely file Federal income tax returns. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Houston, Texas, at the time of the filing of the petition in this case, filed joint Federal income tax returns for the calendar years 1972, 1973 and 1974 with the District Director of Internal Revenue, Austin, Texas. Petitioners' 1972 return was received by the Internal Revenue Service, Austin, Texas, on October 22, 1974. Kenneth P. Carr (petitioner) prepared joint Federal income tax returns for himself and Mrs. Carr for each of the years 1973 and 1974 and placed them in the mail addressed to the Internal Revenue Service in each instance prior *123 to the due date of the return. Petitioner was called by an auditor with the Internal Revenue Service with respect to his 1973 and 1974 returns. When he was called, the auditor asked him if he had a copy of those returns. After looking through his papers, petitioner concluded that he did not have a copy and told the auditor he was sorry he did not have them. He told her, however, that he would attempt to reconstruct the returns as he had filed them and bring the reconstructed returns in with him to the audit. Petitioner filled out a joint income tax return for himself and Mrs. Carr on Form 1040 for each of the years 1973 and 1974. He and Mrs. Carr signed the returns petitioner prepared after he was called by the auditor in April 1975 and petitioner wrote on one of the returns: "This is a true copy of my copy of my return made 10 April 1974." Petitioner took these returns in with him to a conference with the auditor of the Internal Revenue Service on September 10, 1975. The auditor had the returns stamped as received by the Revenue Service on September 10, 1975. The reconstructed return which petitioner prepared for 1974 showed a balance of tax due of $147.86. Petitioner had *124 shown this amount, or approximately this amount, on the return he mailed. The records of the Revenue Service do not show a receipt of the $147.86 shown as due on this return in the year 1975. Petitioner is a surveyor. He operates his surveying business as a sole proprietorship. Petitioner used three automobiles in his business as a land surveyor. Petitioner took speedometer readings on each of his automobiles at the beginning and end of the year to determine the mileage driven on business. One of the cars was a truck which was used almost entirely by petitioner for business purposes. One of the other cars was a Chevrolet station wagon and the third car was a sedan. Petitioner's office was in his home. However, he and his employees drove the truck to various sites in connection with his work and petitioner also drove the station wagon and the sedan in connection with his work. The Chevrolet was primarily a standby car. At times petitioner's wife would drive one of the cars to the courthouse to pick up necessary information for petitioner or would drive the car to various places to pick up blueprints or supplies for petitioner. Petitioner's wife occasionally drove the Chevrolet *125 on personal errands. Sometimes petitioner's son would drive one of the cars on an errand for petitioner. Petitioner's son owned an automobile and never drove one of petitioner's cars for personal reasons. Petitioner and his wife would occasionally drive one of the cars to visit their families, to church, to the grocery store and to various other places for personal reasons. The personal use of the cars by petitioner and his wife was less than 10 percent of the total usage of the cars. The total mileage driven on the two cars and the truck during each of the years here in issue was approximately 70,000 miles. During 1973 and 1974 petitioner paid by check automobile expenses of $1,243.77 and $1,386.91, respectively, in addition to the amounts of automobile expenses allowed by respondent in the notice of deficiency for each of those years. Petitioner, in addition to the amounts paid by check for automobile expenses, paid amounts for gsoline, oil and minor repairs with cash. Petitioner had left his canceled checks for the years 1972, 1973 and 1974 with the Internal Revenue Service Auditor. When he brought the box in which the canceled checks were returned to him by the auditor *126 into Court, it contained only the 1973 and 1974 checks. In 1972, petitioner's brother-in-law died in Moline, Illinois. Petitioner paid $602.15 for his brother-in-law's funeral expenses. In July 1973, petitioner's mother died. Petitioner spent $875 for his mother's funeral and cemetery lot. Petitioner's home, which he purchased in 1958 for $9,800, was on one-half of a lot. The home is a two-level house. Petitioner's office is upstairs in the house and petitioner and his family reside in the downstairs. In addition to the house, a garage and another outbuilding are on the lot. After purchasing this home, petitioner bought the adjacent half lot for $375. In 1967 or 1968, petitioner began to notice some subsidence in the land on which his house stood. The Texas Legislature established the Texas Gulf Coast Subsidence District in 1970 to monitor water withdrawals from certain acreas of Texas and employees of this organization ran various tests and surveys in the area in which petitioner lived. Petitioner noticed that they were running a level check near the property where he lived. Petitioner talked to the people running the survey and was informed that during the previous *127 6 to 8 years there had been land subsidence in some of the areas of as much as 6 to 8 feet. After complaints by individuals in a subvdivision, which was located about 13 or 14 miles from where petitioner lived, the United States Army Engineer Corps from the Galveston District made surveys for the purpose of making recommendations to Congress. Some of these engineers estimated that subsidence in the area had begun as early as 1964 or 1965. Petitioner, at the time of trial, was continuing to notice some subsidence of the land in the area. Some cracks had come in certain portions of petitioner's house which he believed were caused by the land subsidence. Petitioner also had noticed subsidence in other areas around where he lived, particularly in a house which had been built around 1960 on a concrete slab. Petitioner and his children are all members of the Christian Science Church. When petitioner's son was serving in the military in Vietnam, petitioner received reports from his son's commanding officer that his son, Sgt. Carr, was developing certain psychological problems. Thereafter petitioner's son was relieved of duty in Vietnam. He returned to petitioner's home in Texas. *128 Prior to the time petitioner's son left Vietnam, the military had recommended psychiatric care for him. At first, petitioner's son agreed to the psychiatric care, but later declined it on the basis of his Christian Science beliefs. Petitioner was interested in his son's overcoming the difficulties he had developed in Vietnam. He gave his son funds to spend on activities which in petitioner's view would be rehabilitating for him. Although petitioner advised his son with respect to the expenditure of the funds he gave him, the money was for his son to spend as he chose. During the year 1973, petitioner gave his son by checks a total of $4,644, and during 1974 he gave his son by checks a total of $2,640. Petitioner's son spent these funds on various activities in which he was interested. None of the amounts were paid to doctors or Christian Science healers or for any type of medical care. Petitioners on their Federal income tax returns for the calendar years 1972, 1973 and 1974 claimed deductible business expenses in the amounts of $19,710.38, $13,797.60 and $11,260.81, respectively. Included in these claimed deductions in each year was $8,000 for automobile expenses. Respondent *129 in his notice of deficiency disallowed petitioners' claimed business expense deductions except to the extent of $4,835.38, $6,043.76 and $4,585.48 for the years 1972, 1973 and 1974, respectively. In computing the deductible business expenses in the notice of deficiency, the amounts allowed for automobile expenses were $1,100.12, $1,279.50 and $1,155.70 for the years 1972, 1973 and 1974, respectively. Petitioners on their Federal income tax returns for the calendar years 1973 and 1974 claimed casualty loss deductions in the amounts of $1,650 and $1,250, respectively, from subsidence and erosion. Respondent disallowed these claimed deductions in full. Petitioners in their Federal income tax return for the calendar year 1973 claimed a deduction as a medical expense in the amount of $875 for the funeral expenses of petitioner's mother. Respondent disallowed this claimed deduction in full. For the calendar year 1972, included in the business expense deductions claimed by petitioner were the funeral expenses of $602.15 which petitioner paid for his brother-in-law's funeral. This was one of the items disallowed by respondent in the disallowance of petitioner's claimed business expense *130 deductions. Respondent in his notice of deficiency increased the gross receipts as reported by petitioner from his surveying business in 1973 from $19,041.09 to $32,761.38. Petitioner agrees with this adjustment. Petitioner in his tax return did not claim a deduction for amounts given to his son in the years 1973 and 1974, but at the trial claimed that these amounts were deductible as rehabilitation expenses for his son. OPINION Section 162 provides for a deduction for all ordinary and necessary expenses paid or incurred by a taxpayer during the taxable year in carrying on a trade or business. Petitioner was in the business of being a surveyor. Although respondent disallowed various other deductions claimed by petitioner as business expenses during the years 1972, 1973 and 1974 for lack of substantiation, the only item of the disallowed expenses which petitioner attempted to substantiate at the trial was with respect to automobile expense.The record shows that during each of the years here in issue petitioner had three automobiles which were used in his trade or business as a surveyor, and that these automobiles were driven a total of approximately 70,000 miles during each *131 of the years here in issue. The record further shows that only a small portion of the mileage driven was for personal purposes of petitioner or his wife. Had petitioner in his business used only one automobile, our problem would be much less difficult. We concluded from the record that not more than 10 percent of the total mileage the three automobiles were driven was for personal purposes of petitioner. If petitioner had only used one car in his business, petitioner's deductible automobile expense could be computed under Rev. Proc. 70-25, 1970-2 C.B. 506. However, petitioner operated three automobiles in connection with his business as a surveyor.Therefore, petitioner is not entitled to use the alternative basis of computing automobile expense provided in Rev. Proc. 70-25 and may be allowed a deduction for expenses incurred in the operation of these automobiles only for specific expenditures which he is able to substantiate. West v. Commissioner,63 T.C. 252 (1974). Apparently petitioner recognized this fact for he has not claimed that a deduction is allowable to him based on mileage driven computed as provided in the Revenue Procedure. *132 Respondent in the notice of deficiency allowed for each year the amount of expenses which he considered petitioner had substantiated with respect to the use of the automobiles. At the trial respondent stipulated that in addition to the amounts allowed in the deficiency notice, petitioner had substantiated automobile expenses of $1,243.77 for 1973 and $1,386.91 for 1974. Respondent in his brief argues that these additional amounts should not be allowed as a deduction because petitioner has not shown the extent of personal use of the three automobiles. Petitioner testified that many of his expenses on the automobiles were paid by cash. The substantiated amounts represented amounts paid by petitioner by checks. Petitioner estimated that he issued checks for only about 40 percent of the total cost of operating the automobiles. At trial petitioner did not have his checks for 1972. He, however, testified that he had expenses on the automobiles in 1972 of approximately the same amount as for the years 1973 and 1974. Petitioner provided no evidence from which it could be determined whether, and if so to what extent, he is entitled to a depreciation deduction with respect to the *133 automobiles. The amount he claimed to be deductible in his returns was merely his estimate of his total expenditures with respect to the automobiles.
Considering this record as a whole, we conclude that petitioner has shown that the personal driving of his business automobiles was so relatively minor that expenses on the automobiles paid by cash would more than offset the amount applicable to petitioner's personal use of the automobiles. We therefore hold that for 1973 and 1974 petitioner is entitled to a deduction for automobile expenses in the amounts of $1,243.77 and $1,386.91, respectively, in addition to the amounts allowed by respondent in the notice of deficiency. Where records are unavailable, the Court will accept credible, secondary evidence in the form of oral testimony as to the contents of those records. We accept petitioner's testimony with respect to the payment of automobile expenses in 1972 of approximately the same amounts as in 1973 and 1974 by check and by cash. We therefore hold that for the calendar year 1972 petitioner is entitled to a total deduction for automobile expenses of $2,500. Petitioners contend that they are entitled to a deduction for a casualty *134 loss under section 165(c)(3) in each of the years 1973 and 1974 because of damage to their home by subsidence of the land on which it was located.Section 165(c)(3) of the Code provides for a deduction by a taxpayer of losses arising "from fire, storm, shipwreck, or other casualty * * *." It has long been held that the term "casualty" as used in section 165(c)(3) refers to a sudden or unexpected event and does not include the progressive deterioration of property over a relatively long period. Durden v. Commissioner,3 T.C. 1, 3-4 (1944). In Hoppe v. Commissioner,42 T.C. 820 (1964), affd. 354 F.2d 988 (9th Cir. 1966), we discussed in some detail the meaning of the word "sudden" as applied to whether an event might be a casualty under the provisions of section 165(c)(3). In that case, we pointed out that it had been held in a number of cases that termite damage might qualify as a casualty loss where the damage occurred within a relatively short period of time.However, as pointed out in the Hoppe case, in no instance has an event which occurred over an extended period of time been held to have the characteristic of suddenness to cause *135 it to be an "other casualty" such as a fire, storm or shipwreck. Here, petitioner testified that he began to notice the subsidence of his property in 1967 or 1968. He further testified that investigations, of which he was aware, had indicated that the subsidence had been occurring over a period of time commencing before 1965. Accepting petitioner's testimony, we conclude that whatever damage may have been caused to his home by the subsidence of the land on which it stood took place over a period of at least 10 years. Clearly, an event occurring over such an extended period is not a sudden unexpected event comparable to a fire, storm or shipwreck. Hoppe v. Commissioner,supra.We therefore conclude that petitioner is not entitled to any deduction for a casualty loss with respect to any damage which might have occurred to his home in connection with subsidence of the land on which the house stood. [2] For this reason, we do not reach the issue raised by respondent of whether petitioner has shown the fair market value of the house before and after the damage in order to establish the amount of his loss from the land subsidence. However, we note that the record *136 indicates that no such difference may have existed. The amounts claimed by petitioner to be deductible were merely his estimates of the lower value the house might have because of the land subsidence having occurred. Petitioner claimed a deduction in 1972 as a business expense for the amount he paid in connection with the funeral of his brother-in-law, and in 1973 he claimed a medical expense deduction for the $875 he paid for his mother's funeral expenses and cemetery lot. Petitioner has totally failed to show any connection *137 between his business as a surveyor and the amounts he paid as expenses of his brother-in-law's funeral. Section 262 provides that except as otherwise expressly provided in the Revenue Code no deduction shall be allowed for personal living or family expenses. Funeral expenses are clearly personal expenses. We sustain respondent's disallowance of the $602.15 paid by petitioner as the expenses for his brother-in-law's funeral for failure of petitioner to show that this amount was a business as distinguished from a personal expense. Section 213 provides for a deduction for medical expenses.Section 213(a)(1) provides that the deduction is for expenses for "medical care of the taxpayer, his spouse, and dependents * * *." Petitioner here has totally failed to show that his mother was his dependent. For this reason alone, any medical expense paid by petitioner for his mother has not been shown to be deductible by petitioner. Furthermore, funeral expenses are not expenses for "medical care" within the meaning of section 213. Section 213(e) defines the term "medical care" to mean amounts paid "for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose *138 of affecting any structure or function of the body, * * *." Clearly, funeral expenses and cost of a cemetery lot do not fall within this meaning. See Harding v. Commissioner,46 T.C. 502 (1966), pointing out in detail why the loss sustained upon the sale of a personal residence when the taxpayers moved from one community to another to avert possible psychological damage to their daughter was not deductible as medical expenses. Petitioner at the trial claimed a deduction for amounts which he gave to his son in 1973 and 1974 after his son returned from Vietnam suffering from emotional problems. Petitioner stated that he was not claiming a deduction for these amounts as medical expenses. However, petitioner points to no other provision in the Code which might allow these expenses to be deducted. As best we can tell, petitioner's position is that had his son accepted the suggestion of his commanding officer and been given psychiatric treatment at a military installation, the expense to the Government might have been greater than the amounts petitioner seeks to deduct, and the son might have been less successful than in fact he was in overcoming the emotional problems *139 apparently occasioned by his service in Vietnam. Although we sympathize with the problem encountered by petitioner in assisting his son in his recovery from the disturbance occasioned to him by his experiences in Vietnam, there is no section of the Code that permits an allowance of a deduction for the sums petitioner gave to his son during his process of recovery. Petitioner himself testified that although he gave his son some direction as to the expenditure of the amounts he gave him in order that the amounts might be spent in activities geared toward his son's recovery, in fact his son spent the sums as he saw fit. Petitioner's testimony is merely another way of stating that petitioner's son spent the funds petitioner gave him in connection with his everyday activities, which effectively were his ordinary living expenses. As pointed out in Volwiler v. Commissioner,57 T.C. 367 (1971), amounts spent by a taxpayer to purchase an automobile, to pay apartment rent and telephone service for his daughter after she had been hospitalized for 2 years with a mental disorder were not deductible medical expenses. In substance we held that the amounts were for the ordinary *140 living expenses of the taxpayer's daughter. For the same reasons discussed in detail in Volwiler v. Commissioner,supra, the amounts given by petitioner to his son in 1973 and 1974 are not properly deductible by petitioner. The final issue in this case is whether petitioner is liable for additions to tax under section 6653(a) for each of the years here in issue for negligence or intentional disregard of rules and regulations, and under section 6651(a) for the years 1973 and 1974 for failure to timely file returns. Petitioner has offered no evidence to show error in respondent's determination with respect to the additions to tax for negligence or intentional disregard of rules and regulations. Since the burden is on petitioner to show error in this determination by respondent, we sustain respondent's determination. However, we should point out that in our view the record affirmatively shows negligence on the part of petitioner in each of the years here in issue. For the year 1973, petitioner understated gross receipts from his business as a surveyor by approximately $13,000. At the trial petitioner conceded that the amount of gross receipts determined by *141 respondent was correct. Since petitioner had conceded this issue, we would not have mentioned it in our findings except for the fact that it is indicative of negligence on petitioner's part. Also for each of the years 1972, 1973 and 1974, petitioner estimated the cost of operating his business automobiles rather than keeping accurate records of expenditures in connection with the operation of these automobiles. Petitioner did take the speedometer readings at the beginning and close of each year. However, petitioner did not claim to be entitled to compute his deductible automobile expenses on the basis of mileage driven and, as heretofore pointed out, was not entitled to the deduction on that basis. The total lack of an explanation as to why petitioner deducted funeral expenses of his brother-in-law as a business expense is also indicative of negligence in the filing of his Federal income tax returns.We sustain respondent's determination of additions to tax for negligence. Petitioner admitted at the trial that the 1972 return was not timely filed. Petitioner testified, however, that he did in each of the years 1973 and 1974 timely mail a Federal income tax return to the Internal *142 Revenue Service in Austin, Texas. Because of the detailed recitation by petitiner with respect to his recollection of mailing the returns and our observation of petitioner as a witness, we conclude that petitioner did in fact timely mail returns for 1973 and 1974. The record indicates that the returns petitioner mailed for 1973 and 1974 were not received in the proper office of the Internal Revenue Service in Austin, Texas. There is nothing in this record to show that the envelope in which petitioner mailed these returns was addressed to the proper Internal Revenue Service addressed to the proper Internal Revenue Service address in Austin, Texas. From petitioner's testimony, it appears that he has written many communications to Austin and has had problems in other instances with receipt of documents he mailed to Austin, Texas. Petitioner, by showing that he timely placed returns which he had prepared for each of the years 1973 and 1974 in the mail, addressed to some branch of the Internal Revenue Service in Austin, Texas, has not shown that returns were timely filed for those years. Petitioner's returns for the years 1973 and 1974 were not filed within the meaning of section *143 6651(a) until September 10, 1975, when his substitute returns were received by the Internal Revenue Service. However, section 6651(a) provides for the addition to tax for failure to timely file a return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect * * *." In our view, petitioner, by showing that he did timely mail returns addressed to the Internal Revenue Service in Austin, Texas, has shown reasonable cause for failure to timely file his returns for the years 1973 and 1974. Respondent's only argument that petitioner has not shown reasonable cause for failure to timely file his returns is that petitioner's uncorroborated testimony concerning the timely filing of the returns is not enough to carry his burden of proof. Waite Hardware Co. v. Commissioner,6 B.T.A. 1300 (1927). In the Waite Hardware Co. case we stated, at 1301: Chamberlain at one time during the course of his testimony swore positively that a return had been filed for the fiscal year ending January 31, 1920. This statement by him was subsequently qualified to such an extent that it is entitled to no weight. There is in the office of the collector *144 of internal revenue for that district no record of the filing of a return by the petitioner for the fiscal year here involved. We perceive no reason for setting aside the penalty imposed for failure to file the return, * * *. The situation in the Waite Hardware Co. case is quite different from the situation in the instant case. Petitioner here never deviated from his detailed testimony of timely mailing his returns for each of the years 1973 and 1974 to the Internal Revenue Service in Austin, Texas. Petitioner testified in detail with respect to his conversation in regard to the fact that he had mailed these returns to Austin with the auditor of the Internal Revenue Service handling the investigation of his returns.Petitioner named the auditor with whom he spoke. Petitioner's conversation with the auditor was well in advance of the trial of this case. Respondent did not call the auditor as a witness or in any other way attempt to rebut petitiner's detailed testimony. In fact, respondent did not even introduce any document to establish that petitioner had not timely filed returns but relied altogether on the stipulated fact: "Petitiners' 1973 and 1974 returns were received *145 by the Internal Revenue Service, Austin, Texas, on September 10, 1975." This stipulation followed a stipulation that petitioners filed their joint Federal income tax returns for the taxable years 1972, 1973 and 1974 with the District Director of the Internal Revenue Service at Austin, Texas, "copies of which are attached as Joint Exhibits * * * 2-B, and 3-C." Petitioner represented himself at the trial of this case and certainly did not by the stipulations he made intend to concede that he had not timely mailed returns for the years 1973 and 1974 to the Internal Revenue Service. Considering this record as a whole, we conclude that petitioner has shown reasonable cause for the late filing of his income tax returns for the years 1973 and 1974. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
2. We recognize that to some extent petitoner's property was business property.In fact, respondent in the notice of deficiency allowed deductions with respect to petitioner's office in his home. However, this does not assist petitioner with respect to a claimed casualty loss. When and if petitioner repairs the cracks in the walls of the office portion of the house, he may be entitled to a deduction for the cost of an ordinary repair as a business expense. This issue is not before us here. There is no indication that petitioner has expended any amount on repair of the cracks in certain walls of his office which he claims are due to land subsidence.↩