**Louis WIMBISH, Jr. and Marydee Lowe Wimbish, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 4881.**

United States District Court
W. D. Kentucky,
at Louisville.

Jan. 13, 1967.

Robert L. Maddox, Jr., Ernest C. Pepples, Jr., Louisville, Ky., Josiah Willard, New York City, for plaintiffs.

Ernest W. Rivers, U. S. Atty., Louisville, Ky., S. K. Cochran, Dept. of Justice, Refund Trial Section No. 1, Washington, D. C., for the United States.

## MEMORANDUM

BROOKS, Chief Judge.

This action was instituted by Louis Wimbish, Jr. and his wife, Marydee Lowe Wimbish, under Title 28 U.S.C.A. Section 1346(a) (1) to recover from the United States income taxes which were assessed on retirement benefits paid to Louis Wimbish in 1961 and 1962 under the retirement plan of his employer, the Brown & Williamson Tobacco Corporation. The taxability of those benefits turns on the narrow question of whether any portion of Brown & Williamson's contribution toward the purchase of Wimbish's retirement annuity was attributable to foreign service within the meaning of Section 911(a) (1) of the Internal Revenue Code.

Brown & Williamson is a member of an organization known as the British-American Group. This organization is owned and controlled by the British-American Tobacco Company, Ltd. which determines the policies of its subsidiary tobacco corporations that are located all over the world. The retirement policy of all the members of the Group was made uniform by the British-American Tobacco Company. Each of the members offers substantially equal benefits, and they each compute the retirement benefits in the same manner. That computation is made by increasing the employee's benefits in direct proportion to his number of years of service, and in determining an employee's number of years of service, the member from which the employee ultimately retires takes into account not only the years of service which were rendered to itself, but also all the years of service which were previously ren-

dered to any other member of the Group. If an employee ceases his employment before reaching retirement eligibility he receives only a very minor portion of the amount he otherwise would have received if he had been eligible to retire.

Louis Wimbish began his career with the Group in 1924 at the age of 21 as a "covenanted" employee of a member corporation located in China. His employment contract with that corporation provided that at any time he could be transferred to any other company allied or subsidiary to or associated with the British-American Tobacco Company and that upon such transfer or any subsequent transfer the terms and conditions of his employment would remain the same. During his entire career with the Group as an employee of many different members, Wimbish was employed under this single contract dated May 2, 1924, and from 1924 until 1953 he was at all times a bona fide resident of foreign countries working for various foreign members of the Group. However, in 1953, with a view toward his ultimate retirement in the United States, Wimbish was transferred to Brown & Williamson in Louisville, Kentucky, where he was employed until his retirement in 1961. Upon retirement, approximately 75 per cent of his career had been spent in foreign countries.

In accordance with the method dictated by British-American Tobacco Company for all the members of the Group, Brown & Williamson computed the amount of Wimbish's retirement benefits by treating his years of service rendered to other members in the same manner as if those years of service had been rendered to itself. As a result, approximately 75 per cent of the amount contributed to the annuity by Brown & Williamson was based on his foreign service.

Under Section 72(b) and Section 402 (a) of the Internal Revenue Code, except for certain adjustments, the proceeds of the taxpayer's retirement annuity contract are excludable from his gross in-

come in the same ratio as his investment in the contract bears to the expected return under the contract. Under Section 72(f) (2), Wimbish is allowed to treat as his own investment that portion of his employer's contribution toward the purchase of the annuity which would have been excludable from his gross income if his employer had paid that amount directly to him. Finally, Section 911(a) (1) allows the taxpayer to exclude from his gross income all earned income attributable to services rendered while he was a bona fide resident of a foreign country.

Wimbish claims that 75 per cent of the contribution of Brown & Williamson to the annuity, which was based on his years of foreign service, was attributable to such foreign service within the meaning of Section 911(a) (1) and, therefore, it would have been excludable from his gross income if it had been paid directly to him. The Government maintains that none of the Brown & Williamson contribution is attributable to foreign service because it was all earned by Wimbish for the services performed during his eight years with Brown & Williamson in the United States and that the years of foreign service were used by Brown & Williamson merely as a measure of the value of his services to Brown & Williamson.

The evidence discloses it was deemed advantageous by all the members of the Group that there be a supply of "covenanted" employees who could be transferred at any time to the member where their particular talents could best be utilized. Also, to keep such employees, it was necessary to give them some assurance that their rights to retirement benefits would not be jeopardized by being transferred. This assurance could not be given under the ordinary retirement plan which is designed to tie the employee to a single employer by providing that upon ceasing employment before he is eligible to retire the employee forfeits a substantial portion of his retirement benefits. Under such an ordinary retirement plan where two em-

ployees of equal value are compared, the one who has remained with a single employer during his entire career would receive a much greater pension than the one who was transferred to different members of the Group during his career and this would be so even though they rendered substantially equal services to the Group. To overcome this objection and to give to the "covenanted" employees the assurance they required, at least two alternatives existed. First, upon ultimate retirement of an employee within the Group, each of his employers could pay its proportionate share of the full retirement benefits as they existed at the time of retirement with the amount of each employer's share based on the number of years of service rendered to that particular employer. Second, when an employee reached retirement eligibility with one member of the Group, that member could pay the entire pension by computing it on the basis of all years of service rendered to any member. Under this second method there would be a slight deduction for the amounts which became nonforfeitable with previous employers. Under both methods, it was necessary that all of the members offer substantially the same retirement benefits.

It is clear that if the Group had chosen the first method the proportionate shares of the pension which were paid to Wimbish by foreign employers would have been attributable to and earned by his foreign service within the meaning of Section 911(a) (1). This is true even though the greater portion of those shares would not have vested in Wimbish until his retirement from Brown & Williamson. Rev.Rule. 55–497, C.B.1955–2 p. 292. However, the Group chose the second method because of certain advantages. It was simpler because, except for the small amounts which had become nonforfeitable with previous employers, one member would pay the entire annuity, and it also had the important advantage that the pension would be paid in the same currency the

employee would be using during his retirement years.

The Government contends that the adoption of the second method resulted in Brown & Williamson gratuitously compensating Wimbish for services rendered to other members of the Group and argues that since its contributions toward the purchase of the annuity were deducted as a business expense, it was meant as compensation only for services rendered Brown & Williamson. It cites Columbian Rope Co. v. Commissioner, 42 T.C. 800; U. S. Asiatic Co. v. Commissioner, 30 T.C. 1373; Great Island Holding Corp. v. Commissioner, 5 T.C. 150; for the rule that an amount is generally not deductible when paid for services rendered another employer. This argument, however, fails to consider that the retirement plans of all the members of the Group including Brown & Williamson obligated them to compensate an employee upon retirement for services rendered to other members of the Group and, therefore, such payment was not a gratuitous payment of the obligations of another taxpayer.

The Government further argues that when Wimbish was transferred to Brown & Williamson no one was obligated to him in any amount and, therefore, any compensation he received thereafter must have been earned at Brown & Williamson. This argument overlooks the real reason why the retirement benefits were not vested in Wimbish as soon as the services were performed. The reason was not because those benefits had not been earned, but merely because by making the greater part of those benefits forfeitable the Group gained some assurance that its experienced employees would not be easily enticed by a competitor's offer of higher salary. This is a primary reason for the establishment of any retirement plan.

It is not disputed that if Wimbish had been employed by Brown & Williamson during his entire career, that portion of his pension which was based on his years of foreign service would have been ex-

cluded from his gross income under Sections 911 and 72 of the Code. All the Government's arguments, therefore, stress the fact that Wimbish's years of foreign service were spent with other employers. However, these arguments ignore the fact that during his entire career Wimbish was employed under a single contract and that he was at all times an employee of an organization which was formed for the mutual benefit of all its members. All members offered equal retirement benefits and computed those benefits in the same manner. The member from which the employee retired gave him credit for his years of service spent with other members and it did so in order that the Group could maintain transferable employees. Under these facts, the difference in Wimbish's employers is immaterial, and it must be concluded that approximately 75 per cent of Brown & Williamson's contribution to his annuity was attributable to foreign service within the meaning of Section 911(a) (1).

Plaintiff will tender judgment on notice.