T.C. Memo. 1998-336

UNITED STATES TAX COURT

ROBERT A. HALL AND LAVERNE M. HALL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21526-95.                    Filed September 22, 1998.

<u>Daniel A. Raas</u>, for petitioners.

<u>Christal W. Hillstead</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7443A(b) and Rules 180, 181, and 182.[1]

Respondent determined a deficiency in petitioners' 1992
Federal income tax of $662.

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable year in
issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

Petitioners concede that they received in 1992 interest income of $58 that they failed to report on their Federal income tax return and that they are liable for the 10-percent premature distribution tax on retirement distributions to petitioner Laverne Hall in 1992. Petitioners also concede that if certain retirement account distributions to petitioner Robert A. Hall (petitioner) are includable in income, they too are subject to the 10-percent tax on premature distributions.

The issue remaining for decision is whether retirement account distributions to Robert A. Hall (petitioner) are not subject to tax because they constitute income derived from Indian fishing-rights-related activity.

All of the facts have been stipulated and along with the attached exhibits are incorporated herein by reference.

FINDINGS OF FACT

Petitioners resided in Ferndale, Washington, at the time they filed their petition in this case.

Petitioners Robert A. Hall and Laverne M. Hall were in 1992 and are still members of the Swinamish Indian Tribal Community (Swinamish) and the Lummi Indian Tribe (Lummi), respectively, federally recognized Tribes of American Indians. The Swinamish and Lummi Tribes are each signatories of the Treaty of Point Elliot, Jan. 22, 1855, U.S.--Tribes of Indians in Wash. Territory, 12 Stat. 927 (1859), in which both tribes reserved

fishing rights at all of their usual and accustomed fishing grounds and stations.[2]

From 1979 through 1992, petitioner was employed by the Lummi as a full-time worker in the tribal fish hatchery. The parties agree that petitioner's work at the fish hatchery is treaty fishing-rights-related activity as that term is used in section 7873.

The parties further agree that in 1992 all employees of the hatchery received, in addition to wages, the choice to have an extra $160 per month paid for their benefit either into a health plan or a retirement account. Employees could not receive the monthly additional $160 amount except by choosing one of the two offered options.

The parties have stipulated transcripts of petitioner's account with the Capital Guardian Trust Company, Investment Company of America (Guardian). The transcripts show that petitioner's Guardian account was established in September of 1988 and that contributions to the account, accrual of interest to and withdrawals from the account have continued through 1992. Contributions to the account are denominated in the transcript as "employee contribution". The account summaries of the transcripts for the years 1988 through 1990 refer to account

---

[2]See also United States v. Washington, 520 F.2d 676 (9th Cir. 1975).

contributions as "IRA CONTRIBS:". In 1992, petitioner's employer paid $1,920 into the Guardian account.

The Guardian account in 1992 made three payments to petitioner, $750, $915.11 and $759.25, totaling $2,424.36. The 1992 account summary for the Guardian account describes a premature distribution of $2,424.36, of which $12.67 was Form 1099 dividends. The 1992 account summary lists "Form 5498" ("IRA Contribution Information") total contributions of $1,920, and a remaining account value of $155.

Petitioner was not yet 59 1/2 at the time he received the retirement account distributions from Guardian and from a second account with Prudential Insurance Company of America (Prudential). In 1992, the Prudential account paid to petitioner a $268 retirement account distribution.

Petitioners reported on their 1992 Federal income tax return as IRA distributions includable in income the retirement distribution to petitioner from Guardian. Petitioners did not deduct any amount as an IRA deduction. Petitioners did not report the retirement distribution from Prudential or compute the 10 percent tax on premature distributions from either account. Respondent examined petitioners' return and made adjustments including a determination that the Prudential distribution is includable in gross income and that retirement distributions to

petitioner from both the Prudential and Guardian accounts are premature.

OPINION

Positions of the Parties

Petitioner argues that he should not have to include any of the Prudential distribution in income and that he made a mistake by including the Guardian distributions in income because distributions from both accounts are exempt from taxation as income derived by an Indian from fishing-rights-related activity under section 7873.

Section 7873 provides in relevant part:

(a) In General.--

(1) Income and self-employment taxes.--No tax shall be imposed by subtitle A on income derived--

(A) by a member of an Indian tribe directly or through a qualified Indian entity, or

(B) by a qualified Indian entity, from a fishing rights-related activity of such tribe.

(2) Employment taxes.--No tax shall be imposed by subtitle C on remuneration paid for services performed in a fishing rights-related activity of an Indian tribe by a member of such tribe for another member of such tribe or for a qualified Indian entity.

(b) Definitions.--For purposes of this section--

(1) Fishing rights-related activity.--The term "fishing rights-related activity" means, with respect to an Indian tribe, any activity directly related to harvesting, processing, or transporting fish harvested in the exercise of a recognized fishing right of such

tribe or to selling such fish but only if substantially all of such harvesting was performed by members of such tribe.

(2) Recognized fishing rights.--The term "recognized fishing rights" means, with respect to an Indian tribe, fishing rights secured as of March 17, 1988, by a treaty between such tribe and the United States or by an Executive order or an Act of Congress.

(3) Qualified Indian entity.--

(A) In general.--The term "qualified Indian entity" means, with respect to an Indian tribe, any entity if--

(i) such entity is engaged in a fishing rights-related activity of such tribe,

(ii) all of the equity interests in the entity are owned by qualified Indian tribes, members of such tribes, or their spouses,

(iii) except as provided in regulations, in the case of an entity which engages to any extent in any substantial processing or transporting of fish, 90 percent or more of the annual gross receipts of the entity is derived from fishing rights-related activities of one or more qualified Indian tribes each of which owns at least 10 percent of the equity interests in the entity, and

(iv) substantially all of the management functions of the entity are performed by members of qualified Indian tribes.

For purposes of clause (iii), equity interests owned by a member (or the spouse of a member) of a qualified Indian tribe shall be treated as owned by the tribe.

> (B) Qualified Indian tribe.--For purposes of subparagraph (A), an Indian tribe is a qualified Indian tribe with respect to an entity if such entity is engaged in a fishing rights-related activity of such tribe.

The "temporary deposit" of income exempt from tax under section 7873 into a retirement account, argue petitioners, does not change the character of the funds. Therefore, they conclude, distributions that represent a return of originally tax exempt funds are not subject to tax. Petitioners make no argument, however, that interest accumulated in an account is exempt when withdrawn.

Respondent argues that section 7873 was intended by Congress to exempt from income tax only the wages of native people derived from fishing-rights-related activity, that the payments into the Guardian account were in addition to wages, that the source of the payments into the Prudential account is unknown, and that even if the source of the funds contributed to the retirement accounts initially rendered them tax exempt, the distributions from the accounts are not.

Respondent's determinations are generally presumed correct. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Furthermore, every item of a person's gross income is subject to Federal income tax unless there is a statute or some rule of law that exempts the person or the item from gross income. HCSC-Laundry v. United States, 450 U.S. 1, 5 (1981). Tax exemptions,

including those affecting native peoples are not granted by implication. If Congress intends to exempt certain income it must do so expressly. Critzer v. United States, 220 Ct. Cl. 43, 597 F.2d 708 (1979), and cases cited therein.

Section 7873 Income

The parties agree that the wages earned in 1992 by petitioner for his work for the Tribe are income derived "directly or through a qualified Indian entity * * * from a fishing rights-related activity". Sec. 7873(a)(1). Petitioner alleges that he "designated $160 per month to be deducted from his salary and contributed to his retirement accounts" in 1992 and that in prior years he contributed a portion of his earnings to the Prudential account. But both parties have stipulated that in 1992 the $160 monthly amount contributed to his Guardian retirement account was "in addition to wages" and would not have been available to petitioner as a cash payment; he had to chose to have it contributed to either a health plan or a retirement plan.

Despite respondent's argument to the contrary, section 7873(a)(1) provides that "income", not just wages,[3] derived by a member of an Indian tribe directly or through a qualified Indian entity from a fishing-rights-related activity is not subject to

---

[3]With respect to wages earned from services performed in a fishing-rights-related activity, no employment tax is to be imposed by subtitle C. Sec. 7873(a)(2).

income tax.  For purposes of section 7873, <u>income</u> derived from "fishing rights-related activity" means income derived from activity "directly related" to harvesting, processing, transporting, or selling fish in the exercise of recognized fishing rights of an Indian Tribe.  Sec. 7873(b).

<u>Special Provisions for Individual Retirement Accounts</u>

To determine whether, under the facts of this case, the "temporary deposit" of income exempt from tax into a retirement account changes its character requires an examination of the retirement plan provisions.  Special tax provisions apply to a "qualified retirement plan," as that term is used in section 4974(c), including an individual retirement account.

A trust created or organized in the United States that is for the exclusive benefit of an individual or his beneficiaries is an "Individual Retirement Account" (IRA) if it meets certain statutory requirements under section 408(a).  Any IRA is generally exempt from income tax.  Sec. 408(e).  An individual is generally allowed to deduct "qualified retirement contributions" made for the taxable year.  Sec. 219(a).  The deduction is limited to the lesser of $2,000 or the amount of compensation includable in the taxpayer's gross income for the taxable year.  Sec. 219(b).

"[Q]ualified retirement contributions" include amounts paid for the taxable year by or "on behalf of an individual" to an IRA

for the individual's benefit.  Sec. 219(e).  Any amount paid by an employer to an IRA "shall be treated as payment of compensation to the employee", includable in gross income for the taxable year, whether or not the payment is deductible under section 219(a).  Sec. 219(f)(5).

IRA Distributions Taxable as Annuities

An amount paid out of an IRA must generally be included in gross income by the distributee in the manner provided under section 72, annuities, as modified by section 408(d)(1) and (2). An individual's gross income includes amounts received as annuity payments.  Sec. 61(a)(9).  In general, section 72 amounts are includable in income except to the extent they are considered to be a reduction or return of premiums or other consideration paid. Sec. 72(a) and (b); sec. 1.72-1(a), Income Tax Regs.

To determine the extent to which distributed amounts are a reduction or return of premiums or other consideration paid, section 72 distinguishes between "amounts received as an annuity" and "amounts not received as an annuity".  Sec. 1.72-1(b)-(d), Income Tax Regs.

Amounts are "received as an annuity" if they meet the requirements of section 1.72-2(b)(2) or (3), Income Tax Regs., including the requirement that the amounts be payable in periodic installments at regular intervals.  Any other amounts to which section 72 applies are considered "amounts not received as an

annuity".  Sec. 1.72-1(b), Income Tax Regs.  The transcript of account shows that the payments received by petitioner were not periodic or regular.  Petitioner's payments were section 72 payments not received as an annuity.

Petitioners distributions were received before the section 72(c)(4) "annuity starting date".  For payments not received as an annuity, section 72(e)(2)(B) provides that, for distributions received before the annuity starting date, the distributee is entitled to exclude from income any part of the distribution that is allocable to the "investment in the contract" as defined in section 72(e)(6).  Amounts allocable to income on the contract are on the other hand, includable in gross income.  Sec. 72(e)(2)(B), (5)(D), (8)(A) and (B).  In order to determine the investment in the contract, the premiums or other consideration paid for the contract must be calculated.  Sec. 72(e)(6).

Premiums or Other Consideration Paid

Under section 72(f), employees generally are given credit only for nondeductible premiums or other consideration that they have contributed for purposes of computing the "investment in the contract" under section 72(e)(6).[4]  See Campbell v. Commissioner, 108 T.C. 54, 66 (1997); Patrick v. Commissioner, T.C. Memo. 1998-30.  Amounts, however, contributed by the employer are also to be

_____

[4]Under prior law, an individual would never have an "investment in the contract" or "basis" in an IRA.  See Campbell v. Commissioner, 108 T.C. 54, 64-66 (1997).

included as premiums or other consideration paid by the employee[5] if the amounts were taxable to the employee when contributed by the employer or:

> (2) if such amounts had been paid directly to the employee at the time they were contributed, they would not have been includible in the gross income of the employee under the law applicable at the time of such contribution. [Sec. 72(f)(2).]

An example of such amounts is certain payments excludible from income under section 911(a) that were contributed by an employer before 1963. Sec. 1.72-8(a)(2), Income Tax Regs. But the language of section 72(f) is clearly broad enough to include other types of income not subject to taxation, such as income exempt by reason of section 7873.

In the absence of legislative indications to the contrary, we are required to apply statutory provisions as we find them in accordance with their plain meaning. United States v. American Trucking Associations, Inc., 310 U.S. 534, 543-544 (1940); Campbell v. Commissioner, supra at 62. We find that we must include all contributions made by the Tribe, which are denominated "employee" contributions by the trustee of the

---

[5]It does not appear that petitioner's IRA is a simplified employee pension (SEP) under sec. 408(k). All employees of the hatchery received the same amount, $160 a month, for contribution to a health or pension plan. SEP's, among other requirements, must have a formulary relationship between contributions and compensation. Sec. 408(k)(3)(C), (k)(5).

Guardian IRA, as petitioner's investment in the IRA contract. Cf. <u>Wimbish v. United States</u>, 267 F. Supp. 597 (W.D. Ky. 1967).

<u>Amounts Allocated to Investment and Income</u>

Generally, for distributions of amounts not received as annuities, before the annuity starting date, the amount of a distribution allocable to the investment in the contract and thus distributed tax free, is the portion of the amount received that bears the same ratio to the amount received as the investment in the contract bears to the account balance.  Sec. 72(e)(8)(A) and (B).

The operation of section 72(e)(8) is, however, modified in the case of an IRA by section 408(d)(2).  The latter section requires for section 72 purposes that we treat all IRA's as one, all distributions in 1992 as one distribution, and that we compute the value, income, and investment in the contract as of the end of 1992; the value of the contract includes the amount of any distributions during the calendar year (flush language following section 408(d)(2)(C)).

Petitioner has failed to provide any evidence as to the source, year, or amount of the contributions to the Prudential account.  Without such evidence we cannot find that any amount distributed to petitioner from the Prudential account is a return of his investment in the account.

We therefore find that under section 72, as modified by section 408(d)(1) and (2), part of petitioner's retirement account distributions represents a nontaxable return to him of his investment in the contract and part represents accrued income, which petitioner agrees is taxable to him.

Return of Contributions

Before we apply section 72 as modified by section 408(d)(1) and (2), however, we must consider the effect of section 408(d)(4) and (5). Under these provisions, nondeductible amounts contributed to an IRA for a taxable year, and later withdrawn, are not treated as taxable distributions.[6] Contributions withdrawn by the individual by April 15 of the year following the taxable year, for which no deduction is allowed with respect to the contribution, are not taxable upon distribution. Sec. 408(d)(4); Childs v. Commissioner, T.C. Memo. 1996-267.

Petitioner was employed by the Tribe in Indian fishing-rights-related activity. Payments to petitioner for such Indian fishing-rights-related services were not includable in his gross income. Sec. 7873. The contributions made on his behalf to Guardian by the Tribe were made due to his Indian fishing-rights-related services and are considered as "compensation" under

---

[6]A contribution distributed before the due date of the return must be accompanied by the amount of net income attributable to such contribution which net income is includable in gross income. Sec. 408(d)(4).

section 219(f). Therefore, the additional $160 monthly compensation was derived "directly or through a qualified Indian entity * * * from a fishing rights-related activity". Sec. 7873(a)(1). All of petitioner's compensation for the year 1992 was derived from Indian fishing-rights-related activity. And since none of petitioner's compensation for the year was includable in gross income, all of petitioner's IRA contributions for the year are nondeductible. Secs. 219(b), 408(o).

Contributions are deemed to have been made to an IRA on the last day of the preceding taxable year if the contribution is made for that taxable year and is made by the due date of the return for the taxable year. Sec. 219(f)(3). The parties agree that petitioner had $1,920 of IRA contributions paid for tax year 1992.

Since under section 408(d)(4) the distribution to petitioner of nondeductible contributions paid during the taxable year[7] is not subject to section 72, we find that $1,920 of the total distribution from the Guardian account of $2,424.36 in 1992 was a

---

[7]Sec. 408(o)(4)(A)(ii) requires an individual who receives any amount from an IRA for any taxable year to include certain information on his tax return for the year. A taxpayer who without reasonable cause fails to provide the prescribed information form for designated nondeductible contributions may be subject to a fine of $50. Sec. 6693(b)(2). This issue was not raised by respondent.

nontaxable return of contributions.[8]  A portion of the remaining balance of $504.36 is an amount of net income attributable to the contributions for the 1992 taxable year.  See sec. 408(d)(4); sec. 1.408-4(c)(2)(ii) and (iii), Income Tax Regs.  This amount is includable in gross income in 1992 and as the parties have agreed, is subject to the 10 percent premature distribution tax under section 72(t).

Distributions Subject to Section 72 Computation

The balance of $504.36, reduced by the amount of net income attributable to withdrawn contributions for 1992, is subject to the computation under section 72(e)(8) as modified by section 408(d)(1) and (2).  After reduction by the amount of net income attributable to withdrawn contributions, the balance of the amount distributed to petitioner in 1992 that is not taxable is determinable by the section 72(e)(8)(B) formula as modified by section 408(d)(1) and (2):

$$\frac{\text{Total Nondeductible Contributions}^1}{\text{Total IRA Account Balances + Distribution Amount}} \quad \text{x} \quad \text{Distribution Amount}$$

---

[8]Respondent has published notice that when using the sec. 72(e)(8) fraction to determine the amount of a premature distribution to be includable in income, "Neither the numerator nor the denominator of the above equation shall include amounts previously withdrawn pursuant to section 408(d)(4) of the Code."  Notice 87-16, 1987-1 C.B. 446, 452.  Taxpayers are entitled to rely on and the Internal Revenue Service states that it will be bound by substantive and procedural guidance provided by notices or announcements.  Rev. Rul. 90-91, 1990-2 C.B. 262.

[1]Total nondeductible contributions means all contributions prior to the distribution date minus amounts received before such date to the extent excludible from gross income.  Sec. 72(e)(6).

The remainder of petitioner's distribution after determination of the nontaxable amount represents the payment to him of income and as the parties have agreed is subject to the 10-percent premature distribution tax under section 72(t).  We direct that these computations be made by the parties and submitted under Rule 155.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.