T.C. Summary Opinion 2010-171


UNITED STATES TAX COURT


WILLIE A. AND CHARLOTTE J. MORRIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4441-09S.                Filed December 8, 2010.


Willie A. and Charlotte J. Morris, pro se.

<u>Edwin B. Cleverdon</u>, for respondent.


THORNTON, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,
and this opinion shall not be treated as precedent for any other
case.  Unless otherwise noted, all section references are to the
Internal Revenue Code in effect for the year at issue, and all

Rule references are to the Tax Court Rules of Practice and Procedure.

By notice of deficiency dated November 24, 2008, respondent determined a $6,017 deficiency in petitioners' 2006 Federal income tax and a $1,203 accuracy-related penalty pursuant to section 6662(a).

After concessions by both parties, the sole issue remaining for decision is whether certain annuity payments that petitioners received during 2006 are fully includable in their gross income.[1]

## Background

The parties have stipulated some facts, which we incorporate herein. When they petitioned the Court, petitioners resided in Alabama.

In 1995 Willie A. Morris (petitioner) retired from Kimberly-Clark Corp. (Kimberly-Clark). On or about September 30, 1995, Kimberly-Clark distributed $438,752 from petitioner's section 401(k) account, almost all of it in Kimberly-Clark stock. The distributed amount reflected $40,063 of petitioner's after-tax

---

[1]Respondent has conceded his determination in the notice of deficiency that petitioners are taxable on a $14,820 payment from New York Life Insurance Co. Petitioners have not disputed that they failed to report certain interest income as determined in the notice of deficiency. Although respondent alluded to the sec. 6662(a) accuracy-related penalty in his pretrial memorandum, he did not raise the issue at trial or in his posttrial memorandum brief. We deem respondent to have conceded or abandoned this issue.

contributions, $92,106 of his pretax contributions, $128,037 of employer contributions, and $178,546 of untaxed earnings attributable to these various contributions, including $157,213 of unrealized appreciation. Kimberly-Clark distributed petitioner's $40,063 of after-tax contributions directly to him. The $398,689 balance of petitioner's section 401(k) account was rolled over to Olde Discount Brokerage. In a time and manner not revealed by the record, at least some of these assets were ultimately transferred to Coosa Pines Federal Credit Union (Coosa Pines) and apparently used to purchase annuities.[2]

On Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., Coosa Pines reported that in 2006 it made annuity distributions to petitioner totaling $38,341. On their 2006 joint Federal income tax return filed April 15, 2007, petitioners reported these payments but excluded $12,500 as representing a recovery of investment. Respondent disallowed this exclusion.

## Discussion

The parties disagree as to whether respondent correctly determined that the entire $38,341 of annuity payments from Coosa

---

[2]Petitioner testified that these annuities were purchased from four different insurance companies and that Coosa Pines was the "distribution unit". The record is otherwise silent about these transactions.

Pines is includable in petitioners' gross income.  Petitioners have the burden of proof.  See Rule 142(a).[3]

From the sparse evidence in the record, it appears that the annuity payments in question were paid out of an individual retirement account (IRA).  Such distributions must be included in the distributee's gross income pursuant to the annuity rules of section 72.[4]  See sec. 408(d).  Those rules generally include in the annuitant's gross income any amount received as an annuity, sec. 72(a), but allow tax-free recovery of the annuitant's "investment in the contract", sec. 72(b).  The excludable portion of amounts received as an annuity may be determined by applying an "exclusion ratio" as provided under section 72(b)(1).  The Internal Revenue Code provides a simplified method for taxing annuity payments received under a "qualified employer retirement plan".  See sec. 72(d)(1).

Petitioners contend that they properly applied this simplified method in excluding $12,500 of the annuity payment from gross income.  As respondent notes, there is a threshold question whether the simplified method applies, because it is unclear that the annuity payments in question were made from a

---

[3]Petitioners have not claimed or shown that they meet the requirements of sec. 7491(a) to shift the burden of proof to respondent as to any factual issue.

[4]Even if the annuity payments were not paid out of an IRA, they would still be taxable according to the sec. 72 rules, and our analysis would not be significantly different.

qualified employer retirement plan within the meaning of section 72(d)(1). We need not resolve that issue, however, because even if we were to assume, for the sake of argument, that the simplified method is available to petitioners, they have nevertheless failed to establish that they had any investment in the contract.

A taxpayer's investment in the contract consists of his or her nondeductible contributions. See Campbell v. Commissioner, 108 T.C. 54, 65-66 (1997); Hall v. Commissioner, T.C. Memo. 1998-336. For this purpose, an employee's investment in the contract includes amounts contributed by the employer, "but only to the extent that * * * such amounts were includable in the gross income of the employee". Sec. 72(f). Consequently, employee or employer contributions that are not includable in the employee's gross income are not included in the employee's investment in the contract.

In claiming the $12,500 exclusion, petitioners apparently treated the investment in the contract as being $250,000.[5] Petitioners have produced no evidence, however, to support a $250,000 investment in the contract. The evidence shows that petitioner's $40,063 of after-tax contributions was distributed

---

[5]Petitioners apparently assumed that there were 240 expected monthly payments under the annuity. Dividing the purported $250,000 investment in the contract by 240, they determined that the excludable portion of each monthly payment would be $1,041.67. Multiplying this amount by 12 months yielded the $12,500 annualized amount which they seek to exclude.

to him shortly after his retirement from Kimberly-Clark and was not part of the amount of his section 401(k) account that was rolled over into his IRA.[6]  The evidence strongly suggests that the remaining $398,689 of petitioners' section 401(k) account represented amounts contributed by petitioner and Kimberly-Clark (and earnings thereon) that were not previously includable in petitioner's income.  It appears that the annuities in question were acquired with these pretax amounts.  Accordingly, we conclude that petitioner's investment in the contract is zero and consequently that petitioners are entitled to exclude no portion of the annuity payments from gross income.

Petitioners argue that their reporting position for 2006 is correct because they treated the annuity payments the same way for tax years 1995 through 2005.  They allege that although the Internal Revenue Service audited their income tax returns for 1995, 1996, 1998, 2002, and 2005, respondent has not previously challenged their treatment of the annuity payments.  Any failure by respondent to challenge petitioners' treatment of annuity

---

[6]At the time of petitioner's retirement in 1995, applicable law did not permit an after-tax contribution to be rolled over from a sec. 401(k) account to an IRA.  Sec. 402(c)(2) (as in effect for 1995).  Rollovers of after-tax contributions to an IRA were not permitted until 2002, following the passage of the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. 107-16, sec. 642, 115 Stat. 123.  We do not understand petitioners to contend that these after-tax contributions were used to purchase the annuities in question.  In any event, these after-tax contributions obviously fall far short of the $250,000 that petitioners assert as the investment in the contract.

payments in prior years, however, does not preclude respondent's determination for the year at issue. See Coors v. Commissioner, 60 T.C. 368, 406 (1973) ("A prior determination cannot serve to relieve a petitioner of his burden of proving error in the Commissioner's present determination."), affd. 519 F.2d 1280 (10th Cir. 1975); Rose v. Commissioner, 55 T.C. 28, 32 (1970). "The mere acceptance or acquiescence in returns filed by a taxpayer in previous years creates no estoppel against the Commissioner nor does the overlooking of an error in a return upon audit create any such estoppel." Mora v. Commissioner, T.C. Memo. 1972-123; see Dixon v. United States, 381 U.S. 68, 72-73 (1965); Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183-184 (1957); McGuire v. Commissioner, 77 T.C. 765, 779-780 (1981).

Petitioners further argue that the period of limitations has run with regard to transactions that occurred in 1995 and that they cannot be expected to produce documentation from that year in support of their 2006 Federal income tax return. Petitioners are mistaken. Section 6501(a) generally requires the Commissioner to assess tax within 3 years after a return is filed. Petitioners filed their 2006 tax return on April 15, 2007. Respondent issued the notice of deficiency on November 24, 2008. Pursuant to section 6503(a)(1), the mailing of the notice of deficiency tolled the limitations period until 60 days after our final decision. Petitioners are required to retain records

"so long as the contents thereof may become material in the administration of any internal revenue law".  See sec. 1.6001-1(e), Income Tax Regs.

For the reasons described above, we sustain respondent's determination regarding the taxation of the annuity payments.  To reflect the foregoing and the parties' concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.