T.C. Memo. 2017-76

UNITED STATES TAX COURT

CHRISTOPHER S. HARRELL, SR. AND INGRID T. HARRELL, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29383-14.                          Filed May 8, 2017.

Christopher S. Harrell, Sr., and Ingrid T. Harrell, pro sese.

Peter N. Scharff, for respondent.

MEMORANDUM OPINION

THORNTON, Judge:  Respondent determined deficiencies in petitioners'

income tax of $9,881 for 2009 and $9,356 for 2010.[1]  Respondent also determined

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect for the relevant years, and all Rule references are
to the Tax Court Rules of Practice and Procedure.  All monetary amounts are

(continued...)

[*2] that petitioners are liable for accuracy-related penalties under section 6662 of $1,976 for 2009 and $1,871 for 2010.

After the parties' concessions, the remaining issues for decision are: (1) whether any portion of the annuity received by petitioner Ingrid T. Harrell from the New York City Employees' Retirement System is excludable from petitioners' gross income for 2009 and 2010; and (2) whether petitioners are entitled to deduct any expenses paid or incurred for the funeral or in the administration of the estate of Howard Wilkerson.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulated facts are found accordingly. When the petition was filed petitioners resided in New York.

During taxable years 2009 and 2010 Mrs. Harrell received gross distributions of $28,937 from the New York City Employees' Retirement System (NYCERS). Mrs. Harrell received the distributions from NYCERS as the beneficiary of Howard Wilkerson, her father, who died on November 2, 1994. On the date of her father's death, Mrs. Harrell was 24 years old.

---

[1](...continued)
rounded to the nearest dollar.

**[*3]** Mr. Wilkerson was a tier 1 member of NYCERS. The summary plan description (SPD) for tier 1 members of NYCERS states that NYCERS is a defined benefit plan that consists of both employer and employee contributions. The SPD states that "[t]ier 1 Members are required to contribute a portion of their salary each pay period through payroll deductions"; these deductions are "'basic' employee contributions". The basic employee contributions "are not subject to * * * Federal income taxation" in the year contributed, but "those contributions will be subject to Federal taxation" upon distribution. The SPD further states that members may make additional employee contributions beyond the required basic employee contributions up to 50% of the basic employee contribution rate; these additional employee contributions are "subject to income tax in the year the contributions are made."

Mrs. Harrell received a letter from NYCERS dated February 9, 1995, titled "Information Concerning Death Benefit". This document indicates a total benefit payable of $403,829, comprising a member's share of $11,245 and an employer's share of $392,584. The letter does not designate what amount, if any, of the member's share of $11,245 is an additional employee contribution as opposed to the required basic employee contribution. According to a letter from NYCERS dated March 20, 1997, Mrs. Harrell elected to receive the benefit as an annual

[*4] annuity of $28,937 payable for life in equal monthly installments effective November 3, 1994.

During 1994 and 1996 Mrs. Harrell paid various expenses related to her father's death and the administration of his estate. These expenses included, among other things, funeral expenses, attorney's fees, and certified public accountant (C.P.A.) fees. Petitioners provided an unsigned copy of a Form ET-90, New York State Estate Tax Return, for Mr. Wilkerson's estate listing Mrs. Harrell as the executor and reporting an annuity of $298,099 at line 31 and New York estate tax of $8,428. On the Form ET-90 Mrs. Harrell claimed a deduction of $27,400 for, among other things, funeral expenses, estate administration expenses, and debts of decedent and marked the box for "No" with regard to whether a Federal estate tax return was required. A memorandum from the C.P.A. who allegedly prepared the Form ET-90 states that the amount of New York estate tax owed is $13,321. An incomplete copy of a notice of assessment resolution (notice) from the New York State Department of Taxation and Finance dated September 16, 1996, with regard to Mr. Wilkerson's estate, indicates a total

**[*5]** amount of estate tax due of $15,464.  The notice states that the Form ET-90

reported an annuity at line 31 of $403,828,[2] but that

> [t]o determine the proper amount * * * [of the annuity], you should
> consult the Life Expectancy Table.  Using the beneficiary's age and
> the information from the table it will result in the life expectancy.
> That amount multiplied by the annual payment is the figure that
> should be reported * * * [as the annuity amount].  We are unable to
> change tax until an amended return is filed.

The record does not include a copy of an amended Form ET-90.

Petitioners reported the full annuity distributions of $28,937 from NYCERS

on their Forms 1040, U.S. Individual Income Tax Return, for 2009 and 2010.

Petitioners now assert that $16,245 of each of the $28,937 distributions is

excludable from gross income.  On their original 2009 Form 1040 petitioners did

not deduct the expenses incurred in 1994 and 1996 related to the death of, and

administration of the estate of, Mr. Wilkerson, but they now claim entitlement to

them as an estate tax deduction on Schedule A, Itemized Deductions, as a net

operating loss carryforward to their 2009 taxable year.

---

[2]The $1 difference in this amount and the amount we find as the annuity amount is due to rounding.  Additionally, the annuity amount as reported on the Form ET-90 provided by petitioners and the annuity amount as recounted in the notice from the New York State Department of Taxation in Finance do not correspond.  This discrepancy does not affect the outcome of this case.

**[\*6]**                    <u>Discussion</u>

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct. <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). In pertinent part, Rule 142(a)(1) provides the general rule that "[t]he burden of proof shall be upon the petitioner". The submission of this case under Rule 122 does not change or otherwise lessen petitioners' burden of proof. <u>See</u> Rule 122(b); <u>Weaver v. Commissioner</u>, 121 T.C. 273, 275 (2003). Under section 7491(a) if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper income tax liability, and if certain conditions are met, the burden of proof shifts to the Commissioner. <u>See also</u> Rule 142(a). Petitioners do not contend that the burden of proof should shift pursuant to section 7491(a), and we conclude that the burden of proof has not shifted to respondent.

1.    <u>Annuity Payments</u>

Section 61(a) defines "gross income" broadly as "all income from whatever source derived". It is well established that "gross income" is to be broadly construed, while exclusions from income are to be narrowly construed. <u>Commissioner v. Schleier</u>, 515 U.S. 323, 328 (1995); <u>Taggi v. United States</u>, 35 F.3d 93, 95 (2d Cir. 1994). Taxpayers seeking an exclusion from gross income must demonstrate that they are eligible for the exclusion and bring themselves

**[*7]** "within the clear scope of the exclusion". <u>Dobra v. Commissioner</u>, 111 T.C. 339, 349 n.16 (1998).

Section 61(a)(9) and (11) provides that annuities and pensions are among the forms of income within the purview of section 61(a). Section 72 sets forth the specific rules applicable to taxation of, among other things, annuities and distributions from qualified employer retirement plans. <u>See also</u> sec. 403(a). Section 72(a) reiterates the general rule of inclusion in gross income unless otherwise provided. Section 72(b), however, provides that portions of annuity payments may be excludable from income. The excludable portion of a payment generally is that portion which bears the same ratio to the payment as the "investment in the contract" bears to the expected return under the contract determined at the time the annuity payments begin (exclusion ratio). Sec. 72(b)(1).

The term "investment in the contract" is defined by reference to "the aggregate amount of premiums or other consideration paid for the contract". Sec. 72(c)(1)(A). A taxpayer's investment in the contract includes his or her nondeductible contributions. <u>See</u> <u>Campbell v. Commissioner</u>, 108 T.C. 54, 65-66 (1997); <u>Hall v. Commissioner</u>, T.C. Memo. 1998-336, 1998 Tax Ct. Memo LEXIS 334, at *12. For this purpose, an employee's investment in the contract also

**[*8]** includes amounts contributed by the employer, "but only to the extent that * * * such amounts were includable in the gross income of the employee". Sec. 72(f). Consequently, employee or employer contributions that were not includable in the employee's gross income for the contribution year are not included in the employee's investment in the contract.

Additionally, for decedents dying before August 21, 1996, former section 101(b)(1) provided that "[g]ross income does not include amounts received * * * by the beneficiaries or the estate of an employee, if such amounts are paid by or on behalf of an employer and are paid by reason of the death of the employee." See Small Business Job Protection Act of 1996 (SBJPA), Pub. L. No. 104-188, sec. 1402(a), 110 Stat. at 1789. The exclusion amount is limited to $5,000 and is treated as additional investment in the contract. Sec. 101(b)(2)(A) and (D), repealed by SBJPA sec. 1402(a); sec. 1.72-8(b), Income Tax Regs.

Section 72(c)(3)(A) provides that if the expected return under the contract for an annuity depends on the life expectancy of one or more individuals, the expected return is computed with reference to actuarial tables prescribed by the Secretary. Table V of section 1.72-9, Income Tax Regs., is generally used in determining the expected return when the investment in the contract includes a post-June 1986 investment and the annuity is based upon a single life expectancy.

**[*9]** See sec. 1.72-6(d)(7), Income Tax Regs. If the contract provides that one annuitant is to receive a fixed monthly income for life, the expected return is determined by multiplying the total of the annuity payments to be received annually by the multiple shown in the applicable table. Sec. 1.72-5(a)(1), Income Tax Regs.

Section 72(c)(4) provides that the annuity starting date is "the first day of the first period for which an amount is received as an annuity under the contract."

In determining the amounts of the annuity payments excludable from petitioners' gross income, the analysis must begin with a determination of the investment in the contract. The letter from NYCERS regarding the "Information Concerning Death Benefit" states that Mrs. Harrell is entitled to a benefit payable of $403,829 comprising a member's share of $11,245 and an employer's share of $392,584. Petitioners have not produced evidence showing that the member's share of $11,245 was Mr. Wilkerson's investment in the contract. The evidence strongly suggests that the member's share of $11,245 was Mr. Wilkerson's required basic employee contribution to NYCERS that was not previously includable in his gross income. Contrary to petitioners' assertion that the entire amount of the member's share of $11,245 was made with after-tax dollars, the SPD provides that any additional employee contribution is in addition to the basic

**[*10]** employee contribution.  Nothing in the record establishes what portion, if any, of the member's share is an additional employee contribution as opposed to the required basic employee contribution.  Additionally, nothing in the record evidences that any of the employer's share of $392,584 was previously includable in Mr. Wilkerson's gross income.  Therefore, we conclude that none of the NYCERS death benefit of $403,829 is investment in the contract.  However, because Mr. Wilkerson died before August 21, 1996, petitioners are entitled under former section 101(b) to exclude from gross income death benefits of $5,000.  Accordingly, we conclude that petitioners' investment in the contract for the NYCERS death benefit is $5,000.

The expected return on the NYCERS contract is determined by multiplying the total of the annuity payments to be received annually of $28,937 by the multiple shown in the applicable table of section 1.72-9, Income Tax Regs.  The $5,000 NYCERS death benefit was payable as a result of Mr. Wilkerson's death on November 2, 1994.  Thus, the $5,000 death benefit is a post-1986 investment in the NYCERS annuity, and Table V of section 1.72-9, Income Tax Regs., applies.  Mrs. Harrell was 24 years old on November 3, 1994, the date the annuity became effective.  Table V of section 1.72-9, Income Tax Regs., provides that for a single life annuity that begins when the annuitant is 24 years old the multiple is 58.0.  As

[*11] a result the expected return of the NYCERS annuity is the total annual annuity payment of $28,937 multiplied by the multiple shown in Table V of 58.0, or $1,678,346 ($28,937 × 58.0 = $1,678,346).

The exclusion ratio is computed by dividing the investment in the contract of $5,000 by the expected return of $1,678,346, or 0.002979 ($5,000 ÷ $1,678,346 = 0.002979). See sec. 72(b)(1). As a result of applying the exclusion ratio to the NYCERS annual annuity payment of $28,937, the excludable amount is $86 ($28,937 × 0.002979 = $86). See id.

Accordingly, we hold that petitioners are entitled to exclude from gross income $86 of the $28,937 NYCERS annuity payment for each of the taxable years 2009 and 2010.

2.      Expenses Related to Mr. Wilkerson's Death and Estate Administration

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to them. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943); Segel v. Commissioner, 89 T.C. 816, 842 (1987). "It is axiomatic that income is taxed to the person who earns it, and * * * deductions are thus generally not transferable between taxpayers." Vichich v. Commissioner, 146 T.C. 186, 193 (2016) (holding that a surviving spouse was not entitled to inherit or otherwise retain a tax benefit that was originally conferred on the deceased spouse

**[\*12]** (citing <u>United States v. Basye</u>, 410 U.S. 441, 447 (1973); <u>Commissioner v. Culbertson</u>, 337 U.S. 733, 739-740 (1949); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435 (1934); <u>and</u> <u>Lucas v. Earl</u>, 281 U.S. 111, 114-115 (1930))). "[A] taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms." <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. at 440.

In support of their claimed entitlement to a deduction for 2009 for funeral and estate administration expenses for Mr. Wilkerson, petitioners point to various Internal Revenue Service (IRS) publications.[3] Petitioners' reliance on these publications is misplaced.

The publications that petitioners rely upon discuss deductions allowable under section 691(b) and (c), relating to income in respect of decedents, and net operating losses allowable under section 172. Section 691(b) is not pertinent because funeral and estate administration expenses are not specified therein as a

---

[3]Petitioners' seriatim answering brief in support of the deduction for funeral and estate administration expenses references the following IRS publications: Instructions for Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return (Rev. November 2016); Publication 559, Survivors, Executors and Administrators (2009); Publication 575, Pension and Annuity Income (2010); Publication 590, Individual Retirement Arrangements (IRAs) (2009); and Publication 536, Net Operating Losses (NOLs) for Individuals, Estates and Trusts (2009).

**[*13]** type of expense for which a deduction may be claimed; section 691(b) is limited to deductions or credits authorized by sections 162 (trade or business expenses), 163 (interest), 164 (taxes), 212 (expenses for production of income), or 611 (depletion). Section 262 provides that except as otherwise expressly provided in the Code no deduction shall be allowed for personal, living, or family expenses.

Funeral expenses are clearly personal or family expenses. See Beck v. Commissioner, T.C. Memo. 2001-270, 2001 Tax Ct. Memo LEXIS 309, at *43 (holding that income tax deduction claimed for wife's funeral expenses was a nondeductible personal expense); Carr v. Commissioner, T.C. Memo. 1979-400, 1979 Tax Ct. Memo LEXIS 120, at *17-*18 (holding that taxpayer failed to show that funeral expenses for brother-in-law "was a business [expense] as distinguished from a personal expense"); see also Estate of Yetter v. Commissioner, 35 T.C. 737 (1961) (finding that funeral expenses were not properly claimed on estate's fiduciary income tax return but were allowable only as a deduction to the estate under section 2053). Therefore, petitioners are not entitled to a deduction under section 691(b) as the funeral and estate administration expenses are nondeductible personal or family expenses. See sec. 262.

**[\*14]**  Section 691(c) allows a recipient of income in respect of a decedent an income tax deduction equal to the Federal estate tax attributable to that item. Petitioners have not produced evidence that a Federal estate tax return was filed or that Federal estate tax was paid for Mr. Wilkerson's estate.  Therefore petitioners are not entitled to a deduction under section 691(c).

In any event, section 461(a) requires a taxpayer to deduct expenses for the year required under his or her method of accounting.  A cash basis taxpayer generally must deduct his or her expenses for the year that payment of those expenses takes place.  Tippin v. Commissioner, 104 T.C. 518, 531 (1995); Reynolds v. Commissioner, T.C. Memo. 2000-20, aff'd, 296 F.3d 607 (7th Cir. 2002); sec. 1.461-1(a), Income Tax Regs.  For this additional reason, petitioners are not entitled to deductions for their taxable year 2009 for expenses paid in 1994 and 1996.

Finally, petitioners are not entitled to deduct any net operating loss carryforward with respect to the disputed funeral and estate administration expenses.  Because, as previously discussed, these expenses are nondeductible personal or family expenses, they are not allowable expenses in computing any net operating loss.  See sec. 172(c) (defining "net operating loss" as the excess of deductions "allowed" in chapter 1 of the Code over gross income).  And perhaps

**[\*15]** more fundamentally section 172(d)(4) "preclude[s] from the computation of the net operating loss of an individual taxpayer, any deduction which is not attributable to a trade or business, <u>Weill v. Commissioner,</u> 17 T.C. 318 (1951); <u>Townend v. Commissioner,</u> 27 T.C. 99 (1956), unless it be a section 165(c)(3) casualty loss." <u>Rodriguez-Torres v. Commissioner,</u> T.C. Memo. 1970-76, 1970 Tax Ct. Memo LEXIS 281, at \*14 n.6.

In sum, petitioners are not entitled to a deduction for 2009 for funeral or estate administration expenses.[4]

The Court has considered all of petitioners' arguments, contentions, and statements. To the extent not discussed herein, the Court concludes that they are moot, meritless, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.

---

[4]The deductions that petitioners claimed might have been allowable on a Federal estate tax return under sec. 2053(a), which provides that the value of the taxable estate shall be determined by reducing the value of the gross estate for, among other things, funeral and estate administration expenses. The evidence does not show, however, that any Federal estate tax return was filed for Mr. Wilkerson's estate.