146 T.C. No. 12

UNITED STATES TAX COURT

NADINE L. VICHICH, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7509-12.                    Filed April 21, 2016.

Before his marriage to P, H was married to W. In 1998 H
exercised employer-granted incentive stock options that resulted in
alternative minimum tax (AMT) liability, which H reported on a 1998
tax return filed jointly with W. Payment of the AMT liability in 1998
generated an AMT credit carryforward. P was married to H from
2002 until his death in 2004. On her 2009 tax return P reported an
AMT credit derived from H's 1998 AMT credit carryforward that she
used to offset her individual income tax liability. In a notice of
deficiency to P, R disallowed the claimed AMT credit and determined
a deficiency in P's income tax for tax year 2009.

<u>Held</u>: P is not entitled to use the AMT credit to offset her
individual income tax liability for 2009.

Stephen L. Kadish and Matthew F. Kadish, for petitioner.

Emly B. Berndt and Anita A. Gill, for respondent.

OPINION

NEGA, Judge:  By notice of deficiency dated December 23, 2011, respondent determined a deficiency in petitioner's Federal income tax of $151,928 for tax year 2009 and an accuracy-related penalty under section 6662 of $30,385.[1] Respondent concedes that petitioner is not liable for the accuracy-related penalty. The sole issue is whether petitioner is entitled to use an alternative minimum tax (AMT) credit that arose from her deceased husband's exercise of incentive stock options (ISOs) in 1998 to offset her own individual income tax liability for tax year 2009.

## Background

All of the facts in this case, which the parties submitted under Rule 122, have been stipulated and are so found except as stated below.  Petitioner resided in Ohio at the time she filed her petition.

[1]All section references are to the Internal Revenue Code (Code) in effect at all relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner was married to William Vichich from September 1, 2002, until his death on August 21, 2004. Before their marriage William Vichich was married to Marla Vichich until that marriage ended in divorce in January 2002. William and Marla Vichich filed a joint Federal income tax return for 1998 (1998 tax return) in which they reported an AMT payment of $708,181. The AMT reported on the 1998 tax return resulted from the exercise by William Vichich of ISOs granted by his employer.

Petitioner and William Vichich merged their finances upon their marriage. They agreed to file joint tax returns, merged their separate bank accounts into a joint account which they both used for household expenses, and did not execute a prenuptial agreement. Petitioner and William Vichich timely filed their 2002 and 2003 Federal income tax returns. On a Form 8801, Credit for Prior Year Minimum Tax--Individuals, Estates, and Trusts, attached to their 2003 tax return, petitioner and William Vichich claimed an AMT credit of zero and an AMT credit carryforward of $304,442. Petitioner filed a joint return as surviving spouse for tax year 2004. She did not include an AMT carryforward from 2003, nor did she attach a Form 8801 to the 2004 tax return. The Estate of William Vichich filed a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, in

May 2005. The estate tax return did not include an AMT carryforward or a Form 8801.

For tax years 2005 to 2008 petitioner timely filed tax returns that did not include AMT carryforwards or Forms 8801. On January 14, 2010, petitioner filed Form 1040X, Amended U.S. Individual Income Tax Return, for tax year 2007 (amended 2007 return). The amended 2007 return claimed an AMT credit of $29,172 and included a Form 8801 and a Form 8275, Disclosure Statement. The Internal Revenue Service (IRS) subsequently issued a refund of $29,172 to petitioner for tax year 2007. On April 21, 2010, petitioner filed a Form 1040X for tax year 2008 which claimed an AMT credit of $151,928 and included a Form 8801. On December 23, 2011, the Cincinnati, Ohio, Appeals Office of the IRS mailed petitioner a letter of refund disallowance stating that she had not established her entitlement to the AMT credit for tax year 2008.

Petitioner filed her 2009 tax return on October 13, 2010, claiming an AMT credit of $151,928 and including a Form 8801. Petitioner requested a refund of $149,224 on the 2009 return. The IRS issued petitioner a refund of $149,224 for the 2009 tax year. Subsequently, the IRS mailed petitioner a notice of deficiency for tax year 2009 that (1) disallowed the claimed AMT credit, (2) determined a deficiency in petitioner's Federal income tax of $151,928, and (3) imposed an

accuracy-related penalty of $30,385 under section 6662. The parties agreed by stipulation filed on October 6, 2014, that petitioner is not liable for the section 6662 accuracy-related penalty.

## Discussion

### I. Burden of Proof

Because there are no facts to be found, only issues of law as applied to undisputed facts, it is unnecessary to assign burden of proof in this case. See, e.g., Dirico v. Commissioner, 139 T.C. 396, 402 (2012).

### II. The Alternative Minimum Tax and Incentive Stock Options

#### A. Overview

Section 55 imposes an AMT in addition to the regular tax imposed by the Code. The AMT is the amount by which the tentative minimum tax exceeds the taxpayer's regular tax. The tentative minimum tax is computed on an income tax base of alternative minimum taxable income (AMTI), which is an income base broader than the usual base of taxable income for Federal income tax in general. See Allen v. Commissioner, 118 T.C. 1, 5 (2002).

Generally, a taxpayer is not required to recognize income upon the exercise of an ISO. Sec. 421(a). However, for purposes of computing AMTI, section 56(b)(3) provides that section 421 shall not apply to the transfer of stock pursuant

to the exercise of an ISO. The difference between the exercise price and the fair market value of the stock on the date of exercise (the spread) is treated as an item of adjustment and is included in the taxpayer's AMTI. Sec. 83(a); Marcus v. Commissioner, 129 T.C. 24, 27 (2007). Thus, although a taxpayer generally defers regular tax liability resulting from the exercise of ISOs until the stock is sold, the taxpayer may nevertheless incur AMT liability by virtue of having the spread included in AMTI. Secs. 56(b)(3), 421(a). As a result of the AMT treatment of ISOs, a taxpayer has two different bases in the same shares of stock. The regular tax basis is the exercise price, equal to the cost basis. See sec. 1012. The adjusted AMT basis is the exercise price, increased by the amount of income included in AMTI by reason of the exercise of the ISOs. Sec. 56(b)(3); Merlo v. Commissioner, 126 T.C. 205, 209-210 (2006), aff'd, 492 F.3d 618 (5th Cir. 2007).

Section 53 allows a taxpayer to claim a credit for AMT paid in prior years, adjusted for specific items. The credit is limited to the amount by which a taxpayer's regular tax liability, reduced by certain other credits, exceeds the taxpayer's tentative minimum tax. Sec. 53(c).

B.      Additions of Section 53(e) and (f) to the Code

A taxpayer may be required to pay AMT on the spread at the time of the exercise but may not have sufficient subsequent tax liabilities against which to

claim the credit. This may lead to harsh tax consequences. In 2006 Congress

sought to partially ameliorate these effects by enacting section 53(e). See Tax

Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. A, sec. 402, 120

Stat. at 2953. Section 53(e) was amended in 2007 and 2008 (2008 amendment).

See Emergency Economic Stabilization Act of 2008 (EESA), Pub. L. No. 110-343,

sec. 103, 122 Stat. at 3770; Tax Technical Corrections Act of 2007, Pub. L. No.

110-172, sec. 2, 121 Stat. at 2473. After the 2008 amendment, section 53(e)

provided:

> SEC. 53(e). Special Rule for Individuals with Long-Term Unused Credits.--
>
> (1) In general.--If an individual has a long-term unused minimum tax credit for any taxable year beginning before January 1, 2013, the amount determined under subsection (c) for such taxable year shall not be less than the AMT refundable credit amount for such taxable year.
>
> (2) AMT refundable credit amount.--For purposes of paragraph (1), the term "AMT refundable credit amount" means, with respect to any taxable year, the amount (not in excess of the long-term unused minimum tax credit for such taxable year) equal to the greater of--
>
> > (A) 50 percent of the long-term unused minimum tax credit for such taxable year, or
> >
> > (B) the amount (if any) of the AMT refundable credit amount determined under this paragraph for the

taxpayer's preceding taxable year (determined without regard to subsection (f)(2)).

(3) Long-term unused minimum tax credit.--

(A) In general.--For purposes of this subsection, the term "long-term unused minimum tax credit" means, with respect to any taxable year, the portion of the minimum tax credit determined under subsection (b) attributable to the adjusted net minimum tax for taxable years before the 3rd taxable year immediately preceding such taxable year.

(B) First-in, first-out ordering rule.--For purposes of subparagraph (A), credits shall be treated as allowed under subsection (a) on a first-in, first-out basis.

(4) Credit refundable.--For purposes of this title (other than this section), the credit allowed by reason of this subsection shall be treated as if it were allowed under subpart C.

The 2008 amendment allowed the long-term unused minimum tax credit to be claimed over a two-year period, whereas in the 2006 version, it had to be claimed over a five-year period. See H.R. Rept. No. 110-658, at 172 (2008). Additionally, the 2008 amendment eliminated a phaseout applicable to individuals whose adjusted gross income exceeded a specified threshold. Id.

The 2008 amendment also added section 53(f). See EESA sec. 103. In relevant part, section 53(f) provided:

SEC. 53(f). Treatment of Certain Underpayments, Interest, and Penalties Attributable to the Treatment of Incentive Stock Options.--

(1) Abatement.--Any underpayment of tax outstanding on the date of the enactment of this subsection which is attributable to the application of section 56(b)(3) for any taxable year ending before January 1, 2008, and any interest or penalty with respect to such underpayment which is outstanding on such date of enactment, is hereby abated. The amount determined under subsection (b)(1) shall not include any tax abated under the preceding sentence.

(2) Increase in credit for certain interest and penalties already paid.--The AMT refundable credit amount, and the minimum tax credit determined under subsection (b), for the taxpayer's first 2 taxable years beginning after December 31, 2007, shall each be increased by 50 percent of the aggregate amount of the interest and penalties which were paid by the taxpayer before the date of the enactment of this subsection and which would (but for such payment) have been abated under paragraph (1).

Relief under section 53(f)(2) generally was available for taxable years beginning after December 31, 2007. Id. Congress intended for section 53(f) to provide further relief to taxpayers whose stock had declined in value between the initial exercise of an ISO and the stock's subsequent sale: "In the past, Congress provided certain relief in these situations. The Committee [on Ways and Means] believes that additional relief should be provided to correct this problem so that taxpayers are not paying tax on 'phantom' income attributable to incentive stock options." H.R. Rept. No. 110-658, at 172. The "certain relief" provided "[i]n the

past", i.e., in 2006, refers to the enactment of section 53(e). Id. Congress

eliminated section 53(e) and (f) as deadwood in 2014. See Tax Increase

Prevention Act of 2014, Pub. L. No. 113-295, sec. 221, 128 Stat. at 4037.

III.    Availability of AMT Credit

This is a case of first impression. The statute itself does not provide an

answer as to whether petitioner is entitled to the applicable AMT credit, nor are

there any relevant regulations. With this dearth of guidance in mind, petitioner

asks us to decide that section 53(e) allows a taxpayer, to use an AMT credit arising

from ISOs exercised by a deceased spouse. Petitioner argues that section 53(f) is

an equitable remedy and should be broadly construed to allow her to use the long-

term unused minimum tax credits identified in section 53(e). Respondent

disagrees that either subsection (e) or (f) provides petitioner with the requested

relief.

At the outset, we note that neither party has questioned the availability of

the AMT credit to William Vichich following his divorce from Marla Vichich.

Both respondent and petitioner proceed on the assumption that the AMT credit

belonged wholly to William Vichich and that no part of it belonged to Marla

Vichich, with whom he filed a joint return for 1998, the year in which he exercised

ISOs that generated the AMT credit at issue. The issue of a tax benefit surviving a

divorce is closely related to the issue of a tax benefit surviving the death of a spouse.  In both cases, the marriage ceases to exist, and tax attributes reported on a joint return for an earlier year must be properly allocated for subsequent years to the divorced spouses or to the surviving spouse, as applicable.

Whether any of the AMT credit at issue transferred to petitioner upon the death of Mr. Vichich requires that we focus on 2004, the year of Mr. Vichich's passing.  At that time, section 53(e) and (f) had not yet been enacted.  If the credit did not transfer to petitioner, then in 2009, the year in issue, she would have had no credit available to her under section 53(b), and section 53(e) and (f) would be irrelevant.  So we focus first on the question of whether the AMT credit passed to petitioner.

We draw guidance from caselaw where taxpayers sought to use deductions originating with other taxpayers.  Petitioner protests that caselaw concerning entitlement to deductions is inapposite because the issue at bar is entitlement to a credit.  We agree with petitioner that credits and deductions are dissimilar in some ways, but credits share numerous procedural similarities with deductions.  Credits, like deductions, are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to them.  Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943); Segel v. Commissioner, 89 T.C. 816, 842 (1987).  Credits

and deductions both tend to reduce a taxpayer's total tax liability. It is axiomatic that income is taxed to the person who earns it, and credits and deductions are thus generally not transferable between taxpayers. See, e.g., United States v. Basye, 410 U.S. 441, 447 (1973); Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); New Colonial Ice v. Helvering, 292 U.S. 435 (1934); Lucas v. Earl, 281 U.S. 111, 114-115 (1930). With these similarities in mind, we turn to an analysis of statutes and caselaw concerning the use of deductions by related taxpayers, more specifically married couples.

Marriage affords its entrants certain benefits, among them the option of filing joint returns. The Code treats married taxpayers who file jointly as one taxable unit; however, it does not convert two spouses into one single taxpayer. Joint filing allows spouses to aggregate their income and deductions but "does not create a new tax personality". Coerver v. Commissioner, 36 T.C. 252, 254 (1961), aff'd, 297 F.2d 837 (3d Cir. 1962); accord Rodney v. Commissioner, 53 T.C. 287, 307 (1969); Michelson v. Commissioner, T.C. Memo. 1997-39; see also Dolan v. Commissioner, 44 T.C. 420, 428 (1965) ("[H]usband and wife remain separate taxpayers, even though they file a joint return."). Thus, petitioner and William Vichich remained separate taxpayers even though they merged finances and filed joint returns during their marriage. And while joint filing may permit spouses to

"overr[i]de the limitations incident to separate returns", see Taft v. Helvering, 311 U.S. 195, 198 (1940), it generally does not permit either spouse to inherit or otherwise retain after the marriage ends a tax benefit that was originally conferred upon the other spouse. This reasoning is supported in both the Code and the caselaw.

It is well established that married taxpayers filing joint returns may use net operating losses incurred during the marriage to the full extent of their combined income. See secs. 1.172-7(c), 1.172-3(d), Income Tax Regs. A few cases have analyzed whether and to what extent net operating losses sustained before or after the marriage may be used on a joint return. In Calvin v. United States, 354 F.2d 202 (10th Cir. 1965), the taxpayers attempted to use net operating losses that originated with the taxpayer wife before their marriage to offset the taxpayer husband's income earned in their first year of marriage. Relying on section 6013(d) and section 1.172-7, Income Tax Regs., the Court of Appeals for the Tenth Circuit concluded that, for losses occurring before marriage, "the net operating loss provisions are personal to the taxpayer who incurred such loss and only available in other years to offset income of the same taxpayer." Calvin, 354 F.2d at 206. In Zeeman v. United States, 395 F.2d 861 (2d Cir. 1968), the Court of Appeals for the Second Circuit relied on the reasoning in Calvin to deny a loss

carryback to the taxpayer in the "reverse situation" who sustained losses after her husband's death and then sought to carry them back to joint returns in which all of the reported income belonged to her husband. The Court in Zeeman noted succinctly that "[t]he merger of * * * [married couples'] income for tax purposes is linked between different years for only so long as they are married." Id. at 864.

Other law confirms that some tax attributes die with a taxpayer. In Rose v. Commissioner, T.C. Memo. 1973-207, the Court held that a taxpayer may carry forward one-half of the net operating losses reported on joint returns during her marriage and offset them against separate income earned after her husband's death. The determining factor in Rose was the extent to which the taxpayer participated in the risk when the loss occurred; the taxpayer was essentially an equal partner with her husband and was therefore entitled to half of the net operating losses, whereas the losses attributable to her husband's participation in the business were not available for her to use in subsequent years. Id. The analysis in Rose, accords with the treatment of net operating losses under Rev. Rul. 74-175, 1974-1 C.B. 52,[2] which limits the deductibility of capital and net

---

[2]We note that the Court is not bound by revenue rulings, and the weight, if any, that we afford to them depends upon their persuasiveness and the consistency of the Commissioner's position over time. Taproot Admin. Servs., Inc. v. Commissioner, 133 T.C. 202, 208-209 (2009) (citing Skidmore v. Swift & Co.,

(continued...)

operating losses sustained by a decedent during his last taxable year to the final return (whether separate or joint) filed on his behalf; the estate is not eligible to deduct such losses. Similarly, under section 1.170A-10(d)(4)(iii), Income Tax Regs., a taxpayer may not deduct the excess charitable contributions of his or her deceased spouse.

Calvin, Zeeman, and Rose all interpreted the availability of loss deductions where the deduction or offsetting income originated outside of the duration of the marriage. Calvin and Zeeman stand for the principle that spouses are an economic unit only so long as they are married. Rose and section 1.170A-10(d)(4)(iii), Income Tax Regs., both confirm that certain deductions, including net operating losses and excess charitable contributions, are not transferable upon the death of the taxpayer who incurred them.

Further, the ability to offset one spouse's income with the other's loss deductions is available only to spouses who elect to file joint returns. See secs. 1.172-7(c), 1.172-3(d), Income Tax Regs. By definition, a taxpayer cannot file a joint return with a deceased spouse except for the year of death. See sec. 6013(c) and (d). A deceased taxpayer's unused deductions--capital or net operating loss

---

[2](...continued)
323 U.S. 134, 140 (1944), and PSB Holdings, Inc. v. Commissioner, 129 T.C. 131, 142 (2007)), aff'd, 679 F.3d 1109 (9th Cir. 2012).

deductions or deductions for charitable contributions--must be used on the last tax return of the decedent, or they are forever lost.

While we recognize that the purposes of the AMT credit and the NOL carryover are not identical, we nonetheless find informative the authorities limiting the transfer of NOL carryovers between spouses. Petitioner offers us no reason not to extend those authorities to this case. She grounds her claim to the credit in issue entirely in the remedial purposes she alleges underlie section 53(e) and (f). Those subsections, however, have no bearing on her ability to take into account, for purposes of section 53(b)(1), the adjusted net minimum tax imposed on her husband before their marriage. Therefore, because petitioner could not deduct for a postmarital year an NOL incurred by her husband even during their marriage, much less before it, we conclude, on the basis of the record and the arguments before us, that, she was not entitled to take into account under section 53(b)(1) her husband's premarital adjusted net minimum tax liability in computing her own minimum tax credit for tax year 2009.

In reaching our holding, we have considered all arguments made. To the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.