T.C. Memo. 2017-116

UNITED STATES TAX COURT

MAREN K. CONRAD a.k.a. MAREN K. CONRAD-MININGER, Petitioner,
AND JASON E. MININGER, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11772-12.                    Filed June 19, 2017.

Spencer T. Malysiak, for petitioner.

Jason E. Mininger, for himself.

Sarah E. Sexton Martinez, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, Judge:  Maren Conrad and Jason Mininger filed a joint

income-tax return for 2007.  The respondent (whom we refer to as the IRS) issued

a notice of deficiency to them determining an income-tax deficiency of $94,843

[*2] and an accuracy-related penalty under section 6662(a) of $18,968.[1] Maren filed a timely petition for redetermination. Her petition also sought relief from joint and several liability. We hold she is liable for the deficiency, she is liable for the accuracy-related penalty, and she is not entitled to relief from joint and several liability.

FINDINGS OF FACT

Some facts are stipulated, and they are so found. When she filed the petition, Maren was a California resident.[2]

Jason was a childhood friend of Dennis Conrad. They worked together at the Sacramento office of Morgan Stanley Dean Witter. At Morgan Stanley Dennis was a senior vice president, a stockbroker, and an investment adviser. Dennis and Jason used the same tax-return preparer, David Gilliam. Gilliam prepared tax returns for many of the stockbrokers at Morgan Stanley's Sacramento office. The key to Gilliam's success was that he secured large tax refunds for his clients.

_____

[1]Unless otherwise indicated, all references to sections are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

[2]Therefore, an appeal of our decision in this case would go to the U.S. Court of Appeals for the Ninth Circuit unless the parties designate the Court of Appeals for another circuit. See sec. 7482(b)(1) and (2).

**[\*3]** When preparing an individual return for Dennis or Jason, Gilliam also prepared a partnership return for a putative partnership: "Conrad & Associates" for Dennis and "Mininger & Associates" for Jason. Each partnership return reported some gross income. But it also claimed far greater business-expense deductions. These deductions were summarily described in a one-page list of line items and amounts. The partnership return did not reveal what properties or activities the gross income and expenses supposedly corresponded to. The loss reported for each partnership (calculated as the difference between its claimed deductions and its reported gross income) was then claimed as a passthrough deduction on the returns of the purported partners. The Mininger & Associates partnership returns reported that Jason was a partner with his then-wife Michele Mininger. The Conrad & Associates partnership returns reported that Dennis was a 90% partner and that his 10% partner was whoever his girlfriend was at the time.

In June 2003, Dennis met Maren. Maren was 14 years younger than Dennis. She had a college degree and was working as a retail manager.

In December 2003, Dennis and Maren married. Maren quit her job.

Because they were married during 2003, Dennis and Maren were entitled to file a joint return for that year. Gilliam prepared the joint return, which reflected Gilliam's typical partnership return for Conrad & Associates. The

[*4] partnership return reported that Dennis was a 90% partner and Maren was a 10% partner.

In 2004, Dennis and Maren welcomed a son to their family.

In January 2005, Dennis was killed by a house burglar. Jason began helping Maren handle her financial affairs, including the management of the assets she inherited from Dennis. Jason and Maren became romantically involved in February 2005. Jason was married to Michele at the time.

In August 2005, Maren filed a joint return for 2004, a year during which she and Dennis had been married. A partnership return was also filed for Conrad & Associates. Gilliam prepared these returns, and they reflected his typical scheme.

In February 2006, Jason and his two children moved into Maren's house with her.

In February 2006, Maren filed an amended joint return for the 2003 tax year. The amended return corrected some interest-income amounts but reflected the same deductions claimed on the original Gilliam-prepared Conrad & Associates partnership return for 2003.

In September 2006, Jason and Michele divorced.

In June 2007, Maren filed a joint return for the 2005 year. This was the tax year of Dennis's death. As a widow, she was entitled to file a joint return in the

[*5] year of her husband's death.  See sec. 6013(c) and (d); Vichich v. Commissioner, 146 T.C. 186, 195 (2016).  A partnership return was also filed for Conrad & Associates.  Gilliam prepared these returns, and they reflected his typical scheme.

In June 2007, Maren filed a return for the 2006 year.  Although Gilliam prepared the return, he did not prepare a return for Conrad & Associates.  He probably did not do so because Maren did not need any deductions to offset income.  This was the tax year after the year of Dennis's death.

In August 2007, Maren married Jason.  They began filing joint returns.

In May 2008, Maren and Jason filed a joint return for the 2007 year.  A partnership return was also filed for Conrad & Associates.  Gilliam prepared these returns, and they reflected his typical scheme.  The partnership return reported that Maren and Jason were equal partners.  The partnership return reported gross income of $33,194 but claimed total deductions of $284,517.  Thus, the partnership return reported a total ordinary business loss of $251,323, equal to $284,517 – $33,194.  The $284,517 deduction amount was the sum of 18 line items that had been typed on a one-page piece of paper attached to the partnership return.  These line items were:  "Bank Charges"--$2,485, "Car & Truck Expense"--$17,024, "Cellular Phone"--$1,071, "Contract Services"--$78,991,

**[*6]** "Depreciation"--$22,834, "Insurance"--$6,975, "Interest Expense"--$43,077, "Internet Expense"--$860, "Legal & Professional"--$10,800, "Management Fee"--$2,689, "Meal & Entertainment"--$19,033, "Miscellaneous"--$101, "Office Expense"--$47,912, "Postage & Freight"--$781, "Rent"--$22,450, "Tax & Licenses"--$3,911, "Telephone"--$310, and "Utilities"-- $3,213. The reported $251,323 loss, after passing through to the joint return, helped offset the $447,736 in wages that Jason reported earning from Morgan Stanley. The joint return also claimed a deduction for a $14,103 net-operating-loss carryover from Maren's 2006 return. The carryover was attributable to fictitious passthrough deductions claimed on the 2006 return and on prior returns. The 2007 joint return reported that the IRS owed Maren and Jason a refund of $133,795. The IRS paid them this refund through a deposit to a bank account that was in Jason's name. Shortly after the deposit of the refund into Jason's bank account, some money was transferred from his account to a bank account to which Maren had access. Other money from Jason's account was used to pay the couple's household bills.

In March 2011, Maren and Jason separated.

In August 2011, Maren filed a petition to divorce Jason.

In February 2012, the IRS issued the notice of deficiency to Maren and Jason for the 2007 tax year. The notice determined that the $251,323 loss from

**[*7]** Conrad & Associates was zero. It also disallowed a deduction for the $14,103 net-operating loss carried over from Maren's 2006 tax return.

In April 2013, Maren filed the petition seeking redetermination of the deficiency and the penalty and relief from joint and several liability. Jason did not file a petition. However, he intervened in Maren's case as it pertains to her relief from joint and several liability. See Rule 325(b). Under section 6214(a), we have jurisdiction to redetermine the deficiency and the penalty with respect to Maren. Because Jason did not file a petition for redetermination of the deficiency, we have no jurisdiction to redetermine his deficiency or his liability for the penalty. See sec. 6213(a). A taxpayer may seek relief from joint and several liability by raising the matter as an affirmative defense in a petition for redetermination of a deficiency. Sec. 6213(a); Van Arsdalen v. Commissioner, 123 T.C. 135, 138 (2004). This is what Maren has done. We have jurisdiction to determine whether she should be relieved of joint and several liability.

In June 2015, Maren and Jason divorced. They had not yet legally divided their marital property as of the date of their Tax Court trial.

**[*8]**                                     OPINION

1.     <u>The amount of the deficiency</u>

The taxpayer generally has the burden of proof. Rule 142(a). There are certain exceptions. <u>See</u> sec. 7491(a). Maren does not contend the exceptions apply to her case. Nor does the record indicate that the exceptions are applicable.

The deficiency is attributable to two items on Maren and Jason's joint return for the tax year 2007. First, there is a loss of $251,323 passed through from the 2007 partnership return for Conrad & Associates. Second, there is a $14,103 net-operating-loss-carryover deduction which came from prior years' returns filed by Maren.

The IRS contends on brief that all of the deductions on the 2007 partnership return were fictitious. We observe that this contention is consistent with the record. The partnership return, like the other partnership returns that Gilliam prepared for Conrad & Associates and Mininger & Associates, claimed large business-expense deductions. The expenses were described on a one-page attachment that contained no information other than a description of line items and dollar amounts for each line item. For the line item "Depreciation" there is no indication of what assets were being depreciated, their adjusted bases, or the method for depreciation. Generally, the partnership return appears to have been

**[*9]** formatted in such a way as to frustrate attempts to verify its accuracy. It followed the same format as prior years' returns for Conrad & Associates. Despite the filing of all these partnership returns for Conrad & Associates, there is no evidence in the record that Conrad & Associates actually existed. There is one unsigned partnership agreement that Gilliam produced from his files, but there is no indication that this is anything other than window dressing. There are deeds and other documents in the record, all of which show that the owners of various properties were Dennis, Maren, Jason, and their trusts--not Conrad & Associates. And there is no evidence of any other business' being conducted in Conrad & Associates' name.

Thus, it is perhaps no surprise that Maren does not dispute on brief the IRS's contention that all of the deductions on the partnership return were fictitious. Nor does she argue that the net-operating-loss-carryover deduction is genuine. Therefore she has waived any contest regarding the merits of the deductions. See Rule 151; Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001). We conclude that the deductions on the partnership return are fictitious and that the net-operating-loss-carryover deduction is improper. We sustain the deficiency.

**[\*10]** 2.    <u>Penalty</u>

Maren contends that she is not liable for the section 6662(a) penalty, which is a 20% penalty on an underpayment of tax attributable to any of the causes listed in section 6662(b).  The IRS bears the burden of producing evidence that the penalty is attributable to any of those causes.  Sec. 7491(c).  In the notice of deficiency the IRS determined that there was an underpayment on the 2007 joint return that was attributable to both negligence (a cause listed in section 6662(b)(1) and a substantial understatement of income tax (a cause listed in section 6662(b)(2)).  The understatement for the 2007 year, $94,843, is greater than $5,000.  It is also greater than 10% of the tax required to be shown on the return, $11,466 = 10% × $114,667.  Therefore it is "substantial".  <u>See</u> sec. 6662(d)(1)(A).  The IRS has satisfied its burden.

However, the penalty does not apply to the portion of an underpayment for which the taxpayer has reasonable cause and for which the taxpayer acted in good faith.  Sec. 6664(c)(1).  The taxpayer has the burden of proving that this exception applies.  Sec. 7491(c); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 447 (2001).  Maren contends that the exception applies because she relied on Jason and Gilliam to conclude that the 2007 return was proper.

**[*11]** Reasonable cause and good faith are determined on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess the proper tax liability. Id. Taxpayers can demonstrate reasonable cause and good faith if they reasonably relied on professional advice that the tax return was correct. Id. para. (c)(1). This is not such a case. Maren had already signed three returns, for tax years 2003, 2004, and 2005, which used Gilliam's method of claiming fictitious deductions from partnership returns (returns she also signed). Although she did not admit at trial that she knew that the deductions on the 2007 return (or any of the prior years) were fictitious, we find that Maren was aware of their fictitious nature by the 2008 filing date of the 2007 return. The deductions were so large that they offset a significant fraction of the Morgan Stanley wage income earned by Maren's husbands (Dennis in 2003 and 2004 and Jason in 2007). The deductions also produced large income-tax refunds. Although Maren's financial affairs were partially controlled by Dennis and then by Jason, she understood financial affairs, and she showed interest in them. Under our view of the facts, Maren never received real advice from Jason, who was not a tax professional anyway, or Gilliam that the 2007 tax return was correct. She knew

**[*12]** the return was incorrect. Maren has failed to prove that there was reasonable cause or good faith with respect to the 2007 underpayment.

3.    <u>Maren's claim for relief from joint and several liability</u>

Maren seeks all three types of relief from joint and several liability under section 6015, i.e., relief under section 6015(b), (c), and (f), respectively. She has the burden of proof in these matters. <u>See</u> Rule 142(a).

Section 6015(b) affords relief from a liability attributable to an understatement on a joint return. One requirement of section 6015(b) relief is that the understatement be attributable to an erroneous item of the nonrequesting spouse. Sec. 6015(b)(1)(B). Both erroneous items on the 2007 joint return are attributable to Maren: (1) Jason had nothing to do with the net-operating-loss carryover, which was the carryover of an amount reported on Maren's 2006 return, and (2) Maren knew the deductions claimed on the 2007 partnership return (which were reflected in the loss reported on the 2007 joint return) were fictitious. Another requirement of section 6015(b) relief is that the requesting spouse must not know, or have reason to know, of the understatement. Sec. 6015(b)(1)(C). Maren actually knew that the deductions claimed on the 2007 joint return were fictitious. Another requirement of section 6015(b) relief is that it must be inequitable to hold the spouse requesting relief liable for the deficiency

[*13] attributable to the understatement.  Sec. 6015(b)(1)(D).  Considering the facts and circumstances of this case, see id., it is not inequitable to hold Maren liable for the deficiency.  We discuss four factors in particular.  (1) Maren knew from experience that the returns prepared by Gilliam reported fictitious business-expense deductions.  (2) Maren benefited from the understatement.  Although Maren observes that the $113,795 refund resulting from the understated return was deposited into Jason's bank account, this does not mean that Jason exclusively benefited from the understatement.  Bank records show that shortly after the deposit of the refund into Jason's bank account, some money was transferred from his account to a bank account to which Maren had access.  Other money from Jason's account was used to pay the couple's household bills.  Maren argues that Jason took money out of her accounts without her permission.  Factually this argument is supported by the record.  But there is no evidence that Jason absconded with the money.  He and Maren shared a high standard of living.  The money went to fund this lifestyle.  Jason's duplicity does not justify relieving Maren of her liability for the deficiency.  (3) Maren is not current on her federal-income-tax return filings.  She failed to file her returns for the 2011 and 2012 years.  As of the trial, she had not filed a return for 2014.  (4) Maren did not prove that she would suffer economic hardship if she were not relieved of joint and

[*14] several liability. She testified that she earned only a "couple thousand dollars" a month from her current business of giving art lessons to children. But she did not substantiate this testimony with any current tax returns or other documents. Furthermore, the record shows that she has some assets. Weighing all the facts and circumstances, we hold that it is not inequitable for her to be jointly liable.

Section 6015(c) affords relief from joint and several liability for a spouse who is divorced from the spouse with whom he or she filed the joint return. The requesting spouse is liable only for the portion of the liability proven to be properly allocable to him or her. Sec. 6015(c)(1) and (2). Maren has not demonstrated that the deficiency is not allocable to her. The fictitious deductions on the partnership return were part of a scheme attributable to both Maren and Jason. The net-operating-loss-carryover deduction claimed on the 2007 return relates to a loss reported on Maren's 2006 return. Furthermore, relief is not available with respect to a portion of a deficiency where the IRS proves that the requesting spouse had actual knowledge of the item giving rise to the deficiency. Sec. 6015(c)(3)(C); sec. 1.6015-3(c)(2)(i)(B)(1), Income Tax Regs. Maren must have known that the partnership returns prepared by Gilliam were fictitious.

**[\*15]** Section 6015(f) provides that under procedures prescribed by the Treasury Secretary, if, taking into account all of the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency, the Secretary may relieve the individual of the liability. The IRS's guidelines for determining whether to grant section 6015(f) relief are found in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296. If certain threshold conditions are met, then the IRS will relieve the requesting spouse of liability if either (1) three additional conditions for so-called "streamlined" relief are met or (2) relief is justified upon consideration of multiple equitable factors. Maren's claim for relief fails one of the IRS's threshold conditions because she knowingly participated in the filing of a fraudulent joint return. See Rev. Proc. 2013-34, sec. 4.01(6), 2013-43 I.R.B. at 399. The 2007 partnership return, which consisted entirely of fictitious deductions, was fraudulent, and Maren must have known from experience that it was false when she signed it. Furthermore, Maren would not be entitled to streamlined relief because (1) she will not suffer economic hardship if relief is refused and (2) she knew that there was an understatement on the 2007 return. See id. sec. 4.02, 2013-43 I.R.B. at 400. Furthermore, Maren would not be entitled to relief after consideration of multiple equitable factors. The same factors that we

**[*16]** discussed in the context of section 6015(b) relief are also the equitable factors considered by the IRS in Rev. Proc. 2013-34, <u>supra</u>.  <u>See</u> <u>supra</u> part 3; sec. 1.6015-2(d), Income Tax Regs.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.